# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

CERTAIN UNDERWRITERS AT
LLOYD'S LONDON SUBSCRIBING
TO POLICY NUMBER
501/NB03ACMB,

        Plaintiff,

vs.                                                                          No. CIV 04-937 JB/WDS

STEVEN NANCE and L.J. DOLLOFF
ASSOCIATES OF NEW MEXICO, INC.,

        Defendants.

and

STEVEN NANCE,

        Counterplaintiff, Crossplaintiff, and Additional Party Plaintiff,

vs.

CERTAIN UNDERWRITERS

        Counterdefendant,

L.J. DOLLOFF ASSOCIATES OF NEW MEXICO, INC.,

        Cross Defendant, and

L.J. DOLLOFF ASSOCIATES, INC.,

        Additional Party Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Defendant L.J. Dolloff Associates, Inc.'s

Motion to Dismiss, filed February 8, 2006 (Doc. 39).  The Court held a hearing on this motion on

March 27, 2006.  The primary issues are: (i) whether the Court has subject matter jurisdiction over Counterplaintiff, Crossplaintiff, and Additional Party Plaintiff Steven Nance's state law claims against Defendant L.J. Dolloff Associates, Inc. ("Dolloff New York"), joined by the Court as a necessary party under rule 19 of the Federal Rules of Civil Procedure; (ii) whether the doctrine of res judicata precludes the relief that Nance seeks against Dollof New York; and (iii) whether the doctrine of collateral estoppel precludes the relief that Nance seeks against Dolloff New York.  The Court finds that it has jurisdiction over this matter and that neither res judicata nor collateral estoppel precludes all of Nance's claims against Dolloff New York.   The Court will grant the motion in part and deny the motion to dismiss in part.

## FACTUAL BACKGROUND

The Court recited this case's factual background at pages 2 through 4 of its Memorandum Opinion and Order remanding Nance's declaratory judgment action, Cause No. CIV-05-144, to the Second State Judicial District Court, filed July 31, 2005 (Doc. 14).  Dolloff New York is a retail and wholesale insurance broker.  Defendant L.J. Dolloff Associates of New Mexico, Inc. ("Dolloff New Mexico") is a retail insurance broker.  Dolloff New York maintains that, at all times pertinent to this action, it was a distinct entity and operation from Dolloff New Mexico.  Dolloff New York represents that Dolloff New Mexico went out of business after the death of its only employee and cannot pay any part of any judgment against it.

## PROCEDURAL BACKGROUND OF RELATED
## STATE AND FEDERAL CASES

In July 1998, Nance sued Fighting Back Training Institute, Inc. ("Fighting Back"), a karate school in Albuquerque, in New Mexico state court for damages resulting from an injury Nance

suffered on January 20, 1998 while a student at the school.  Nance obtained a default judgment against Fighting Back and two individuals in the amount of $751,022.00. Fighting Back ceased doing business, and Nance obtained an assignment of all rights Fighting Back had against all other parties for indemnification, contribution, or other theories of liability related to Nance's injury.  Based upon that assignment, Nance has filed numerous lawsuits attempting – unsuccessfully thus far – to recover the amount awarded in the state court's default judgment.  Among the targets of Nance's claims are Dolloff New York, Dolloff New Mexico, and Dolloff New York's professional liability insurers, the Lloyd's Underwriters ("Lloyd's"), who is the Plaintiff in this case.

1.      **Nance - State I.**

In May 2003, Nance initiated his first attempt to collect the proceeds of the judgment against Fighting Back, suing Dolloff New Mexico and Dolloff New York in New Mexico state district court. See Nance v. L.J. Dolloff Assocs. of N.M., Inc., No. CV-03-03133 (N.M. Second Jud. Dist. 2003)("Nance - State I").  Nance alleged negligent misrepresentation, unfair insurance practices, and bad faith.  Nance alleged that Dolloff New York at all times directed and controlled the activities of Dolloff New Mexico, and that Dolloff New Mexico was the alter ego of and/or the agent of Dolloff New York.

Dolloff New Mexico failed to appear and, in August 2003, the trial court entered default judgment against it on the issue of liability.  The trial court entered a judgment for damages totaling $1,043,286.24 against Dolloff New Mexico on April 27, 2004.  Alleging that the suit was barred on statute of limitations grounds, Dolloff New York filed for summary judgment, which the trial court granted after a hearing on the motion.  Nance then moved for reconsideration on grounds that fraudulent concealment on the part of Dolloff New York had tolled the statute of limitations.  The

trial court denied that motion.

In its defense to Nance's action in Nance - State I, Dolloff New York declined to address the nature of its relationship with Dolloff New Mexico.  Dolloff New York characterized that relationship as "immaterial" and indicated that its motion for summary judgment was "limited to the effect of the statute of limitations."  Nance - State I, Dollof New York's Reply to Plaintiff's Response to Motion for Summary Judgment on Statute of Limitations, at 5.

Nance appealed the trial court's decisions to grant summary judgment and deny his motion for reconsideration to the New Mexico Court of Appeals.  See Nance v. L.J. Dolloff Assocs., Inc., 2006-NMCA-012, 126 P.3d 1215.  In an opinion issued on December 6, 2005, the New Mexico Court of Appeals concluded that the statute of limitations had run on Nance's claims and affirmed the trial court's grant of summary judgment.  With regard to its relationship with Dolloff New Mexico, Dolloff New York assumed on appeal it was the alter ego of Dolloff New Mexico.  See Nance v. L.J. Dolloff Assocs., Inc., 2006-NMCA-012, ¶ 10, 126 P.3d at 1218 ("We note at the outset that Dolloff New York . . . assumes for purposes of this appeal that Dolloff New Mexico was the alter ego of Dolloff New York.").

**2.      Nance - State II.**

On January 3, 2005, Nance then filed a complaint for declaratory judgment in New Mexico state court.  See Nance v. Certain Underwriters at Lloyds of London, CIV-05-00014 (N.M. Second Jud. Dist. 2005)("Nance - State II").  Nance sought a declaration that Dolloff New York was responsible for the judgment against Dolloff New Mexico and that Lloyd's had an obligation to indemnify Dolloff New Mexico and Dolloff New York.

Lloyd's filed a notice of removal and removed Nance - State II to the United States District

Court for the District of New Mexico on February 9, 2005.  See Nance v. Certain Underwriters at Lloyds, London, CV-05-144 JB/WDS (D.N.M 2005)("Nance - Federal I").  On July 31, 2005, the Court remanded Nance - Federal I to the Second State Judicial District Court, concluding that there was not complete diversity of citizenship between the parties.  See Nance - Federal I, Memorandum Opinion and Order, filed July 31, 2005 (Doc. 14).  After the Court remanded Nance - State II/Nance Federal I to the Second State Judicial District, the state court consolidated Nance -State I with Nance - State II, and stayed the consolidated case pending the Court's resolution of this case.[1]

## PROCEDURAL BACKGROUND IN THIS CASE

After Nance filed for a writ of garnishment against Lloyd's in Nance - State I, but before Nance had requested declaratory relief from the state district court in Nance - State II, Lloyd's filed a Complaint with this Court seeking a declaration that it did not owe a duty to Nance or Dolloff New Mexico.  See Complaint for Declaratory Judgment, filed Aug. 19, 2004 (Doc. 1)("Lloyd's Complaint").  Specifically, Lloyd's requests the Court to declare: (i) that neither Dolloff New Mexico nor Nance is an assured, and therefore Lloyd's has no obligation to indemnify them; and (ii) that even if Dolloff New Mexico and/or Nance could be considered an assured, there is no potential for coverage under the applicable insurance policy.

On December 23, 2005, Nance filed an Answer, Counterclaim, Crossclaims, and Jury Demand in the federal court case.  See Steven Nance's Answer, Counterclaims, Crossclaims, and Jury Demand, filed December 23, 2005 (Doc. 30)("Nance's Answer").  In his Answer, Nance alleges that Lloyd's failed to join Dolloff New York and Dolloff New Mexico, and that both were indispensable

---

[1]The two cases were consolidated under the case number for Nance - State I, No. CV-03-03133.

parties.[2]  See id. at 2.  Additionally, Nance raised counterclaims against Lloyd's, and crossclaims

against Dolloff New York and Dolloff New Mexico.[3]  Subsequent to filing his Answer, Nance filed

a motion requesting that the Court add Dolloff New York as an indispensable party pursuant to rule

19 of the Federal Rules of Civil Procedure.[4]  See Steven Nance's Motion to Join Indispensable Party

and Memorandum in Support Thereof, filed December 23, 2005 (Doc. 29).  Lloyd's did not object

to the joinder, and the Court granted Nance's request, joining Dolloff New York as an Additional

Party Defendant.[5]  See Order, filed December 31, 2005 (Doc. 33).

---

[2]Nance's Answer does not contend that Lloyds failed to name Dolloff New Mexico in its complaint; rather, it asserts that, "[b]y failing to serve [Dolloff New Mexico] with Summons and Complaint herein, Plaintiff has failed to join an indispensable party."  The Court need not decide that issue on this motion.  The Court notes, however, that Dolloff New Mexico has not entered an appearance, and no party disputes that Dolloff New Mexico went out of business after the death of its sole employee and cannot pay any judgment entered against it.

[3]Nance's Answer does not expressly request that either Dolloff New York or Dolloff New Mexico is joined as an indispensable party; he alleges that Lloyd's failed to do so.  Additionally, Paragraph 26 of Nance's Answer is labeled "Crossclaims Against Dolloff New Mexico."  Nance's Answer ¶ 26, at 8-9.  The allegations contained therein, however, seem to be targeted at Dolloff New York and do not seem to raise any issue of adversity between Nance and Dolloff New Mexico.

[4]Nance limited his motion to a request to add Dolloff New York as an Additional Party Defendant.  The motion did not specifically request the Court to add Dolloff New Mexico.  Further, although Nance requested that Dolloff New York be added as an "indispensable" party, the Court has construed his motion as one to add Dolloff as a "necessary" party.  Under rule 19, a party does not become indispensable until a court determines that they are necessary, but that their joinder is not feasible.  See Citizen Potawatomi Nation v. Norton, 248 F.3d 993, 997 (10th Cir. 2001)(outlining three step process for determining whether action should be dismissed for failure to join an indispensable party).

[5]The Court's December 31, 2005 Order does not indicate which parties the Court is adding to the litigation.  The Order refers, however, to Nance's motion and states that it is granting the motion.  The Order does not refer to Dolloff New Mexico or to Nance's Answer.

## LAW REGARDING SUBJECT MATTER JURISDICTION

**1.     Supplemental Jurisdiction.**

It is a fundamental precept of American law that the federal courts are "courts of limited jurisdiction." Exxon Mobil Corp. v. Allapattah Servs., Inc., 125 S. Ct. 2611, 2616 (2005). Federal courts "possess only that power authorized by [the] Constitution and statute." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Among the powers which Congress has bestowed upon the courts is the power to hear controversies arising under federal law– federal question jurisdiction– and controversies arising between citizens of different states– diversity jurisdiction. See 28 U.S.C. § 1332.

Although a statutory basis is necessary for federal courts to exercise jurisdiction over a controversy, "it is well established– in certain classes of cases– that, once a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy." Exxon Mobil Corp. v. Allapattah Servs., Inc., 125 S. Ct. at 2617. The Supreme Court of the United States has long subscribed to the concept of supplemental jurisdiction recognized in two common law doctrines– pendent and ancillary jurisdiction. Federal courts may exercise pendent jurisdiction over state law claims when "state and federal claims . . . derive from a common nucleus of operative fact." United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966).

Ancillary jurisdiction gives federal courts the flexibility to hear a cause of action even after the introduction of third parties whose insertion into the litigation is not supported by any independent grounds for federal jurisdiction, when those parties share a common interest in the outcome of the litigation and are logical participants in it. See Owen Equip. & Erection Co. v.

Kroger, 437 U.S. 365, 375 n.18 (1978).  In 1990, Congress codified the application of pendent and

ancillary jurisdiction when it passed the Judicial Improvements Act:

> [I]n any civil action of which the district courts have original jurisdiction, the district
> courts shall have supplemental jurisdiction over all other claims that are so related to
> claims in the action within such original jurisdiction that they form part of the same
> case or controversy under Article III of the United States Constitution.  Such
> supplemental jurisdiction shall include claims that involve the joinder or intervention
> of additional parties.

28 U.S.C. § 1367(a).  In enacting the supplemental jurisdiction statute, Congress took into account

principles of judicial economy and the proliferation of modern procedural devices common in

complex, multiparty litigation.

### 2.        The Impact of Rule 19.

Beginning with Chief Justice Marshall's opinion in Strawbridge v. Curtiss, 7 U.S. (3 Cranch)

267, 267-68 (1806), the Supreme Court has consistently held that 28 U.S.C. § 1332 requires

complete diversity to sustain federal court jurisdiction.  Therefore, for a federal court to have original

jurisdiction over a diversity claim, each plaintiff must be a citizen of a different state than each

defendant.  See Exxon Mobil Corp. v. Attapattah Servs., Inc., 125 S. Ct. at 2617.  As venerable as

that rule is, however, it is a matter of statutory construction; the Supreme Court has never

categorized complete diversity as a constitutional imperative.  See State Farm Fire & Cas, Co. v.

Tashire, 386 U.S. 523, 530-31 (1967)("Article III poses no obstacle to the legislative extension of

federal jurisdiction, founded on diversity, so long as any two adverse parties are not co-citizens.").

Rule 19 provides for the compulsory joinder, if feasible, of parties necessary for the fair

adjudication of a controversy.

> A person who is subject to service of process and whose joinder will not deprive the
> court of jurisdiction over the subject matter of the action shall be joined as a party in

the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19.  Although rule 19 governs the procedural propriety of when a party must be compelled to join a lawsuit, the plain text of the rule indicates that it does not serve to expand the jurisdiction of the federal court.  See Fed. R. Civ. P. 82 ("These rules shall not be construed to extend or limit the jurisdiction of the United States district courts or the venue of actions therein.").  Accordingly, when a party is deemed necessary under rule 19, but the party's introduction to the litigation would destroy complete diversity and thereby undermine the court's subject matter jurisdiction, joinder is not feasible.  See Sac & Fox Nation of Mo. v. Pierce, 213 F.3d 566, 581 n.11 (10th Cir. 2000)(noting that joinder of a necessary party was feasible because it would not destroy the court's subject matter jurisdiction).

Subsection (b) of the supplemental jurisdiction statute recognizes this complication and expressly prohibits jurisdiction over claims by plaintiffs against non-diverse parties joined pursuant to rules 14 (impleader), 19 (compulsive joinder), 20 (permissive joinder), or 24 (intervention) of the Federal Rules of Civil Procedure.  See 28 U.S.C. 1367(b).  Nothing in the language of the statute, however, prohibits claims subsequently brought by defendants against non-diverse parties. 4 Moore's Federal Practice, § 19.04[1][b] (Matthew Bender 3d ed.).  Moreover, allowing such claims is in accord with federal courts' pre-statutory understanding of the ancillary jurisdiction rule.  See King Fisher Marine Serv., Inc. v. 21st Phoenix Corp., 893 F.2d 1155, 1161 (10th Cir. 1990)(allowing defendant's claim against non-diverse third-party defendant).  Several courts, as well as the major

treatises, have continued to recognize counterclaims and cross claims initiated by defendants against parties not diverse to the defendants as within the supplemental jurisdiction of federal courts.  See Viacom Int'l, Inc. v. Kearney, 212 F.3d 721, 727 (2d Cir. 2000); Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc., 54 F.3d 156, 161 (3d Cir. 1995); Meritor Sav. Bank v. Camelback Canyon Investors, 783 F. Supp. 455, 456-457 (D. Ariz. 1991); 16 Moore's Federal Practice, § 106.41.

### 3.      District Court Discretion.

The United States Court of Appeals for the Tenth Circuit has followed the Supreme Court's lead in classifying supplemental jurisdiction not as a litigant's right, but as a matter of judicial discretion.  See Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d 1161, 1165 (10th Cir. 2004)(citing City of Chi. v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997)).  In circumstances where the supplemental jurisdiction statute may support supplemental jurisdiction, the district court retains discretion to decline to exercise that jurisdiction.  The statute enumerates four factors which the court should consider:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  In applying these factors, district courts should seek to exercise supplemental jurisdiction in an effort to "vindicate values of economy, convenience, fairness, and comity."  Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d at 1164.

## LAW REGARDING PRECLUSION DOCTRINES

**1.      Res Judicata.**

The doctrine of res judicata, or claim preclusion, "bars a subsequent suit involving the same parties or privies based on the same cause of action." Myers v. Olson, 100 N.M. 745, 747, 676 P.2d 822, 824 (1984).

> Res judicata bars a subsequent lawsuit if four elements are met: "1) the parties must be the same or in privity; 2) the subject matter must be identical; 3) the capacity or character of persons for or against whom the claim is made must be the same; and 4) the same cause of action must be involved in both suits."

Deflon v. Sawyers, 2006-NMSC-025, ¶ 3, 137 P.3d 577, 580 (quoting Myers v. Olson, 100 N.M at 747, 676 P.2d at 824). Courts apply res judicata "to protect individuals from the burden of litigating multiple lawsuits, to promote judicial economy, and to promote the policy favoring reliance on final judgments by minimizing the possibility of inconsistent decisions." Myers v. Olson, 100 N.M. at 747, 676 P.2d at 824. In evaluating an action's preclusive effect, courts apply the law of the forum in which the first case was litigated. See Moffat v. Branch, 2005-NMCA-103, ¶ 11, 118 P.3d 732, 736. The Supreme Court of New Mexico has acknowledged that, in determining the appropriate deference to grant a previous judgment, "[f]ederal law and New Mexico law are not divergent on claim preclusion doctrine." Deflon v. Sawyers, 2006-NMSC-025, ¶ 2, 137 P.3d at 580 (quoting Moffat v. Branch, 2005-NMCA-103, ¶ 11, 118 P.3d at 736).

**2.      Collateral Estoppel.**

The doctrine of collateral estoppel, or issue preclusion, promotes judicial economy by preventing relitigation of "ultimate facts or issues actually and necessarily decided in a prior suit." Int'l Paper Co. v. Farrar, 102 N.M. 739, 741, 700 P.2d 642, 644 (1984). To invoke collateral

estoppel, the moving party must demonstrate that: "(1) the party to be estopped was a party to the prior proceeding, (2) the cause of action in the case presently before the court is different from the cause of action in the prior adjudication, (3) the issue was actually litigated in the prior adjudication, and (4) the issue was necessarily determined in the prior litigation."  Shovelin v. Cent. N.M. Elec. Coop., Inc., 115 N.M. 293, 297, 850 P.2d 996, 1000 (1993).  The Supreme Court of New Mexico has approved the use of both offensive and defensive collateral estoppel.

> [W]e hold that the doctrine of defensive collateral estoppel may be applied when a defendant seeks to preclude a plaintiff from relitigating an issue the plaintiff has previously litigated and lost regardless of whether defendant was privy to the prior suit; and that the doctrine of offensive collateral estoppel may be applied when a plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully regardless of whether plaintiff was privy to the prior action.

Silva v. State, 106 N.M. 472, 476, 745 P.2d 380, 384 (1987).  Finally, fundamental fairness requires the party against whom collateral estoppel is asserted was given a full and fair opportunity to litigate the issue in the prior litigation, and that a final decision was reached on the ultimate question at issue. See id. at 474, 745 P.2d at 382.

## ANALYSIS

## I.   THE COURT HAS SUBJECT MATTER JURISDICTION.

Because subject matter jurisdiction involves the court's power to hear a case, see Arbaugh v. Y & H Corp., 126 S. Ct. 1235, 1244 (2006), the Court first addresses Dolloff New York's argument that the Court should not exercise its discretion to grant ancillary or supplemental jurisdiction.  Dolloff New York does not argue that the Court does not have jurisdiction over the original declaratory action that Lloyd's filed against Nance and Dolloff New Mexico.  In its Complaint, Lloyd's requests the Court to grant it a declaratory judgment pursuant to 28 U.S.C. §

2201 and asserts subject matter jurisdiction pursuant to 28 U.S.C. § 1332.  <u>See</u>  Lloyd's Complaint, ¶¶ 1, 3, at 1-2 (alleging a suit between citizens of New Mexico and citizens of a foreign state and more than $75,000 in controversy).

In cases in which the district courts have original jurisdiction, Congress has granted the courts supplemental jurisdiction "over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  Dolloff New York does not appear to argue, and the Court does not believe, that Nance's cross claims against it are not closely related to the declaratory action that Lloyd's filed against Nance and Dolloff New Mexico or that the two actions do not "derive from a common nucleus of operative fact."  <u>United Mine Workers v. Gibbs</u>, 383 U.S. at 725.  To the contrary, determining whether there was a legal relationship between Dolloff New York and Dolloff New Mexico during the period Nance was prosecuting his suit for misrepresentation and bad faith insurance practices in state court, <u>see</u> <u>Nance - State I</u>, is inextricably intertwined with the resolution of Lloyd's action for declaratory relief.  In addition, Dolloff New York was joined in this action as a necessary party pursuant to rule 19.[6]  The plain language of rule 19 compels the conclusion that "[c]laims by or against necessary parties are by definition so closely related to the underlying dispute that they satisfy the 'common nucleus of operative fact' test and, therefore, the grant of supplemental jurisdiction in the supplemental

_____

[6]In its Memorandum in support of this motion, Dolloff New York argues that it was improperly joined in this action under rule 14 of the Federal Rules of Civil Procedure.  <u>See</u> Defendant L.J. Dolloff Associates, Inc.'s Memorandum in Support of its Motion to Dismiss, at 10-11, filed February 8, 2006 (Doc. 40).  The Court is not aware of any filings in this case that invoke rule 14. Although the Court has already acknowledged that Nance improperly requested that Dolloff New York be joined as an "indispensable" party, rather than a "necessary" party, Nance's motion was adequate to effect a compulsory joinder pursuant to rule 19.  Consequently, the Court will not address Dolloff New York's argument that it is not a properly impleaded defendant under rule 14.

-13-

jurisdiction statute." 4 Moore's Federal Practice § 19.04[1][a].

  The Court will not be able to conclusively adjudicate the coverage issues that Lloyd's raises without adjudicating the issue whether Dolloff New York and Dolloff New Mexico are legally one and the same. The policy at play makes the coverage determination turn on two independent issues: (i) whether Dolloff New Mexico is an "assured" under the policy; or (ii) whether the judgment against Dolloff New Mexico is one for which Dolloff New York is legally responsible. The policy does not restrict the basis upon which Dolloff New York's "legal responsibility" for Dolloff New Mexico's judgment must be founded. Any competent legal theory of responsibility for that judgment is adequate.

  The Court is aware that the joinder of a necessary third party may have an effect on a federal court's subject matter jurisdiction when original jurisdiction is based on diversity. The supplemental jurisdiction statute specifically addresses this possibility and prohibits jurisdiction over claims by plaintiffs against non-diverse parties joined pursuant to various procedural devices, including rule 19. Although Dolloff New York has not raised the argument that its insertion into the litigation destroys complete diversity, the Court is obligated to make an independent inquiry into whether subject matter jurisdiction exists. See Arbaugh v. Y & H Corp., 126 S. Ct. at 1244.

  On the surface, there do not appear to be any concerns related to the Court's diversity jurisdiction, as Lloyd's appears to be diverse from all Defendants. After Lloyd's filed its Complaint, Nance responded with a counterclaim and cross claims against Dolloff New Mexico and Dolloff New York. In light of the current state of the actions in this case, the Court has two concerns. The first is Nance's cross claim against Dolloff New Mexico, an action by a New Mexico citizen against an entity with New Mexico citizenship. Nothing in the supplemental jurisdiction statute, however,

-14-

prohibits cross claims against non-diverse defendants, and permitting such claims is consistent with the Tenth Circuit's traditional understanding and application of ancillary jurisdiction. See King Fisher Marine Serv., Inc. v. 21st Phoenix Corp., 893 F.2d at 1161.

The Court's second concern is more problematic.  The law is unclear whether the Court should inquire into the citizenship of each participating "name" in the Lloyd's syndicates in determining Lloyd's citizenship for the purposes of diversity jurisdiction.  See Advani Enters., Inc. v. Underwriters at Lloyds, 140 F.3d 157, 161 (2d Cir. 1998)(noting that there is no consensus among courts as to how to determine citizenship in diversity cases involving Lloyd's syndicates).  In Nance - Federal I, the Court presented this question to the parties, and in its response to the Court's question, Lloyd's represented that there was no Tenth Circuit authority on point and cited to conflicting views among other Circuit Courts of Appeals.  Compare Certain Interested Underwriters at Lloyd's, London v. Layne, 26 F.3d 39 (6th Cir. 1994)(holding that the citizenship of certain underwriters at Lloyd's of London, for diversity purposes, should be determined by considering the citizenship of the underwriters for the syndicates that issued the policy and not the citizenship of all members of the syndicates), with Ind. Gas Co. v. Home Ins. Co., 141 F.3d 314 (7th Cir. 1998)(concluding that underwriting syndicates at Lloyd's of London must be treated like limited partnerships for purposes of determining their citizenship).  The Court has made its own inquiry into the question and has found no authority harmonizing these decisions.

At least one other district court in the Tenth Circuit has considered a similar issue involving Lloyd's.  In Youell v. Grimes, 203 F.R.D. 503 (D. Kan. 2001), the United States District Court for the District of Kansas considered whether Lloyd's syndicates are legal entities with the capacity to sue and be sued.  See id. at 508-09.  The court in Youell v. Grimes concluded that Lloyd's syndicates

are not legal entities, but rather are more analogous to unincorporated associations. Id. at 509. The court stated that its conclusion was consistent with the majority position and cited to the United States Court of Appeals for the Seventh Circuit's decision in Indiana Gas Co. v. Home Insurance Company.

At the Court's request, Lloyd's has provided the residency of all members of the syndicates subscribing to the policy at issue in this case. None of the members are from New Mexico. Twenty nine of the members, however, are from New York, raising a question whether Lloyd's is diverse from Dolloff New York. Because Lloyd's has not brought any claims against Dolloff New York in this litigation, the Court need not decide that issue on this motion. Should, however, Lloyd's decide to bring claims against Dolloff New York in the future, or its requested declaratory relief include Dolloff New York, and the Court were to decide that Lloyd's and Dolloff New York were not diverse parties, the Court would not have subject matter jurisdiction over the claims and would not be able to afford Lloyd's any relief against Dolloff New York. This limitation may also restrict the declaratory relief that Lloyd's can secure in this action vis-a-vis Dolloff New York.

Dolloff New York argues that, even if the Court should determine it has subject matter jurisdiction over this case, it should still decline to exercise that discretion. In support of this argument, Dolloff New York cites to United Mine Workers of America v. Gibbs, and suggests that, once a court has determined that supplemental claims are derived from the same set of operative facts as those upon which original jurisdiction is based, the court must consider whether deciding the otherwise jurisdictionally deficient claims will foster fairness and judicial economy. While the Court agrees that judicial economy and fairness are important policy considerations in determining whether it should exercise its discretion to hear supplemental claims, and that United Mine Workers of

America v. Gibbs has traditionally provided jurisprudential guidelines for that determination, in enacting the Judicial Improvements Act, Congress has spoken specifically to this issue and replaced the traditional analysis with a statutory framework. See 28 U.S.C. § 1367(c).

The Court believes that, unless one of the conditions of 28 U.S.C. § 1367(c) exists, the Court is not free to decline jurisdiction. In reaching this conclusion, the Court follows the lead of courts which have acknowledged that 28 U.S.C. § 1367(c) necessarily changed the district courts' supplemental jurisdiction discretion analysis. See Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 447 (2d Cir. 1998)("Section 1367 has indeed altered Gibbs' discretionary analysis."); McLaurin v. Prater, 30 F.3d 982, 985 (8th Cir. 1994)("The statute plainly allows the district court to reject jurisdiction over supplemental claims only in the four instances described therein."); Executive Software N. Am. v. U.S. Dist. Court, 24 F.3d 1545, 1557 (9th Cir. 1994)("By codifying preexisting applications of Gibbs in subsections (c)(1)-(3), however, it is clear that Congress intended the exercise of discretion to be triggered by the court's identification of a factual predicate that corresponds to one of the section 1367(c) categories."); Palmer v. Hosp. Auth., 22 F.3d 1559, 1569 (11th Cir. 1994)("[S]upplemental jurisdiction must be exercised in the absence of any of the four factors of section 1367(c)."). Other district courts in the Tenth Circuit have reached the same conclusion. See Gudenkauf v. Stauffer Commc'ns, Inc., 896 F. Supp. 1082, 1084 (D. Kan. 1995)("[A]ny exercise of discretion declining jurisdiction over pendent claims or parties cannot occur until "triggered" by the existence of one of the four conditions enumerated.").

In applying the 28 U.S.C. § 1367(c) factors, the Court first looks to see if the issue raises novel or complex questions of state law that would be better adjudicated by a state court. This case raises issues of insurance, contract, and agency law as well as the application of preclusion doctrines.

The Court does not believe that any of these issues raise novel or complex questions of state law such that the Court is at risk of misunderstanding what the law is or that principles of comity counsel that the matter should be adjudicated by a state court.  While application of the law may be difficult in this case, New Mexico law on res judicata and collateral estoppel is well established.  While the Court may not apply state law correctly, or Dolloff New York may not approve of the Court's application of the law, that is something it can take up on appeal.  The state of the law is not seriously in dispute.

The Court next considers whether Nance's claim against Dolloff New York substantially predominates over Lloyd's claims against Nance and Dolloff New Mexico.  The Court believes that in many aspects, the two claims are one in the same.  In essence, Lloyd's seeks a declaration that it is not liable for a judgment entered against Dolloff New Mexico, and Nance seeks a declaration that Dolloff New York is liable for a judgment entered against Dolloff New Mexico as an alter ego of Dolloff New Mexico and acting in its capacity as an agent of Lloyd's.  At the very least, the causes of action are inextricably intertwined in so much as a determination that Dolloff New York is not liable to Nance would become a highly determinative, if not potentially dispositive, factor in Lloyd's action against Nance and Dolloff New Mexico.

Nor has the Court dismissed all of the claims over which it had original jurisdiction.  Because Nance's cross claim against Dolloff New York is a diversity action over which the Court would have jurisdiction if it was brought separately, the Court does not necessarily view it as a "state" claim.  This case does not involve supplemental jurisdiction in which some of the plaintiff's claims are federal question causes of actions and some are pendent state law claims related to the same transaction.  All of the claims over which the Court has original jurisdiction remain.  Consequently, the third 28 U.S.C. § 1367(c) factor counsels against declining supplemental jurisdiction.

-18-

Finally, the Court may decline to exercise supplemental jurisdiction if exceptional circumstances suggest a compelling reason for declining jurisdiction.  Although Dolloff New York does not discuss district court discretion in the context of 28 U.S.C. § 1367(c), the Court construes its memorandum in support of this motion to argue that the concurrent action pending in state court constitutes a compelling reason for the Court to refrain from hearing the cause of action against it. The Tenth Circuit has directed district courts to weigh principles of economy, convenience, fairness, and comity in determining whether to exercise supplemental jurisdiction.  See Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d at 1164.  In this case, Lloyd's has exercised its right to have its case heard in a federal court, the questions inherent in Nance's case against Dolloff New York are closely related, if not identical, to the questions over which the Court has original jurisdiction, and the state court has voluntarily stayed its proceedings pending the Court's resolution of the matter, thereby alleviating any encroachment on comity.  The parties need some court to resolve the coverage issues, and while the federal court has deferred to the state court, the state court has indicated it strongly desires this Court to decide the issues.  In considering the totality of the circumstances, the Court does not find exceptional circumstances constituting a compelling reason to decline jurisdiction over Nance's claim against Dolloff New York.

## II.   RES JUDICATA DOES NOT BAR ALL OF NANCE'S CLAIM OR CLAIMS AGAINST DOLLOFF NEW YORK.

Dolloff New York argues that the Court must dismiss Nance's cross claim because the doctrine of res judicata bars it.  Dolloff New York construes the cross claim to be the same cause of action Nance raised against it in Nance - State I.  In Nance - State I, Dolloff New York argued that the statute of limitations barred Nance's action alleging misrepresentation and bad faith insurance

practices.  The Second State Judicial District Court granted Dolloff New York summary judgment

on those grounds and the New Mexico Court of Appeals affirmed the district court.

The doctrine of "[r]es judicata bars relitigation of the same claim between the same parties

or their privies when the first litigation resulted in a final judgment on the merits."  Deflon v. Sawyers,

2006-NMSC-025, ¶ 2, 137 P.3d at 580. A decision based on a statute of limitations is considered "on

the merits."  Nwosun v. Gen. Mills Rest., Inc., 124 F.3d 1255, 1257 (10th Cir. 1997).  A court should

apply res judicata if four elements are met: (i) the parties must be the same; (ii) the subject matter of

the two cases must be identical; (iii) the parties appear in the same capacity; and (iv) the same cause

of action is involved in both suits.

Nance was the plaintiff and Dolloff New York a defendant in both Nance - State I and the

cross claim in this case.  The subject matter of the two cases– Nance's attempt to collect on damages

awarded pursuant to a judgment entered against Fighting Back– is the same.  The final two elements

of res judicata, however, do not apply.

First, although the parties are the same in both cases, Nance does not appear, for all claims,

in the same capacity in both suits.  In Nance - State I, Nance appeared as an assignee of Fighting

Back and brought an action against Dolloff New Mexico and Dolloff New York for misrepresentation

and bad faith insurance practices; Dolloff New York defended itself from the position of an alleged

tortfeasor.  In the case before the Court, Nance primarily brings a cross claim as a judgment creditor

of Dolloff New Mexico seeking a declaration that Dollof New Mexico and Dolloff New York are in

fact a single non-distinguishable legal entity; Dollof New York defends itself as an alleged alter ego

of Dolloff New Mexico.

Dolloff New York argues that Nance's cross claim is nothing more than his original cause of

action dressed up in the clothes of a new legal theory.  In support of its argument, Dolloff New York cites, without explanation, Three Rivers Land Co. v. Maddoux, 98 N.M. 690, 652 P.2d 240 (1982), overruled on other grounds by Universal Life Church v. Coxon, 105 N.M. 57, 59, 728 P.2d 467, 469 (1986).  Dolloff New York's argument is not persuasive.

In Three Rivers Land Co. v. Maddoux, the plaintiffs brought two different law suits based on the same transaction, a contract for the sale of land.  The only difference between the two law suits was the remedy that the plaintiffs sought– specific performance in the first suit and damages in the second.  Reasoning that "a mere change in legal theory does not create a new cause of action," the Supreme Court of New Mexico held that res judicata barred the plaintiffs' second suit.  Three Rivers Land Co. v. Maddoux, 98 N.M. at 695, 652 P.2d at 245.

Unlike the plaintiffs' two law suits in Three Rivers Land Co. v. Maddoux, Nance's cross claim before the Court appears to be more than a request for an alternative remedy.  At least in part, it is a new cause of action.  In his Answer, Nance subtitles the section containing his cross claim against Dolloff New York "Declaratory Judgment and Damages."  Nance's Answer ¶ 25, at 7.  To the extent that Nance is requesting a declaration that Dolloff New York is liable for the default judgment in Nance - State I because it and Dolloff New Mexico are alter egos or an assessment of damages against Dolloff New York for the judgment attained against Dolloff New Mexico in Nance - State I,  his request presents a new cause of action and falls within the category of requests that the Court may adjudicate pursuant to the Declaratory Judgment Act.  See 28 U.S.C. § 2201(a).  Conversely, to the extent that Nance is requesting a declaration of liability against Dolloff New York for the claims made in Nance - State I, he is suing in the same capacity in both suits and brings the same cause of action; the Court finds that those claims have already been litigated and are barred by res

judicata.  Nance may ask the Court to declare Dolloff New York and Dolloff New Mexico a single legal entity, but he may not relitigate the misrepresentation or bad faith claims brought in Nance - State I, nor attempt to sidestep the state court's ruling under theories such as contribution or indemnification which would cause Dolloff New York to relitigate its liability under the claims for misrepresentation or bad faith.

Because Nance and Dolloff New Mexico do not appear in this suit in the same capacity as they appeared in Nance - State I, and because, at least in part, the cause of action currently brought by Nance is distinct from the cause of action brought in Nance - State I, res judicata does not entirely bar Nance's cause of action against Dolloff New York in this case.  He can pursue collection of the default judgment, obtained against Dolloff New Mexico, against Dolloff New York.  To the extent, however, that Nance's cross claim re-raises his misrepresentation or bad faith insurance practices claims already decided in Nance - State I, or causes Dolloff New York to defend itself against liability for those same claims, res judicata bars his action and the claims will be dismissed.

## II.   COLLATERAL ESTOPPEL DOES NOT BAR ALL OF NANCE'S CLAIM OR CLAIMS AGAINST DOLLOFF NEW YORK.

Dolloff New York argues that collateral estoppel bars Nance's cross claim in so far as it pertains to Dolloff New Mexico's status as the alter ego of Dolloff New York.  Dolloff New York represents that Nance raised this issue in Nance - State I and that the issue was ultimately disposed of in that litigation.  Dolloff New York, however, improperly amalgamates the ultimate outcome of Nance - State I with the resolution of a particular issue and, as a result, his collateral estoppel argument can not sustain his position.

To invoke collateral estoppel, the moving party must demonstrate that: "(1) the party to be

estopped was a party to the prior proceeding, (2) the cause of action in the case presently before the court is different from the cause of action in the prior adjudication, (3) the issue was actually litigated in the prior adjudication, and (4) the issue was necessarily determined in the prior litigation." Shovelin v. Cent. N.M. Elec. Coop., Inc., 115 N.M. at 297, 850 P.2d at 1000.  Before the doctrine is applied, fundamental fairness requires a showing that the party against whom collateral estoppel is asserted was given a full and fair opportunity to litigate the issue in the prior proceeding, and that a final decision was reached on the ultimate question at issue.  See Silva v. State, 106 N.M. at 474, 745 P.2d at 382.

The Court acknowledges that Nance, the party to be estopped, was a party to the prior litigation, but believes that Dolloff New York is unable to prove any of the other elements of collateral estoppel.  The Court has already discussed that, at least in part, the cause of action in Nance's cross claim may not be an entirely different cause of action from the misrepresentation and bad faith insurance practices cause of action raised against Dolloff New Mexico and Dolloff New York in Nance - State I.  Second, the issue was not actually litigated in Nance - State I.  Indeed, in its reply to Nance's response to its motion for summary judgment, Dolloff New York characterized its relationship with Dolloff New Mexico as "immaterial" and indicated that its motion was "limited to the effect of the statute of limitations." Nance - State I, Dollof New York's Reply to Plaintiff's Response to Motion for Summary Judgment on Statute of Limitations, at 5.  In its opinion affirming the district court's grant of summary judgment, the New Mexico Court of Appeals stated: "We note at the outset that Dolloff New York . . . assumes for purposes of this appeal that Dolloff New Mexico was the alter ego of Dolloff New York.  Therefore, in this opinion we refer to Dolloff New Mexico and Dolloff New York collectively as 'Dolloff'" Nance v. L.J. Dolloff Assocs., Inc., 2006-NMCA-

-23-

012, ¶ 10, 126 P.3d at 1218.  Finally, because <u>Nance - State I</u> was decided on summary judgment, the <u>legal</u> issue of liability was necessarily determined, but the <u>factual</u> issue whether Dolloff New Mexico was the alter ego or agent of Dolloff New York was not decided.

Because the cause of action currently brought by Nance in this case is not entirely distinct from the cause of action brought in <u>Nance - State I</u>, and because the issue whether Dolloff New Mexico was the alter ego of Dolloff New York was not litigated or ultimately decided in <u>Nance - State I</u>, the doctrine of collateral estoppel does not apply to block Nance's claims against Dolloff New York in this case.

**IT IS ORDERED** that Defendant L.J. Dolloff Associates, Inc.'s Motion to Dismiss is granted in part  and denied in part.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

R. Nelson Franse
Lisa Chavez Ortega
Rodey, Dickason, Sloan, Akin & Robb, P.A.
Albuquerque, New Mexico

    *Attorneys for Plaintiff Certain Underwriters at Lloyd's London*

Pete V. Domenici, Jr.
Jeanne Cameron Washburn

Domenici Law Firm, P.C.
Albuquerque, New Mexico

– and –

Alan R. Jampol
Jampol, Zimet, Skane & Wilcox, LLP
Los Angeles, California

     *Attorneys for Defendant L.J. Dolloff Associates, Inc.*

L. Edward Glass
David G. Reynolds
Carter Law Firm
Albuquerque, New Mexico

     *Attorneys for Counterplaintiff, Crossplaintiff, and Additional Party Plaintiff Steven Nance*