## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

CERTAIN UNDERWRITERS AT
LLOYD'S, LONDON, SUBSCRIBING TO
POLICY NUMBER 501/NB03ACMD,

       Plaintiff,

vs.                                         No. CIV-04-0937 JB/WDS

STEVEN NANCE AND L.J. DOLLOFF
ASSOCIATES OF NEW MEXICO, INC., a
New Mexico Corporation,

       Defendants.

STEVEN NANCE,

       Counterplaintiff, Crossplaintiff, and Additional Party Plaintiff,

vs.

CERTAIN UNDERWRITERS AT
UNDERWRITERS, LONDON, SUBSCRIBING TO
POLICY NUMBER 501/NB03ACMD,

       Counterdefendant,

L.J. DOLLOFF ASSOCIATES OF NEW MEXICO, INC.,

       Cross Defendant, and

L.J. DOLLOFF ASSOCIATES, INC.,

       Additional Party Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Motion for Summary Judgment by Plaintiff

Certain Underwriters at Lloyd's, London, filed August 23, 2006 (Doc. 74)("Underwriters' Summary

Judgment Motion"). The Court held a hearing on the motion on January 29, 2007. The primary

issues are: (i) whether Cross-Defendant L.J. Dolloff Associates of New Mexico, Inc. ("Dolloff New

Mexico") is an "Assured" on the Claims-Made Insurance Policy, number 501/NB03ACMB, that

Plaintiff Certain Underwriters at Lloyd's, London, subscribing to policy number 501/NB03ACMD

("Underwriters") issued to Additional Party Defendant L.J. Dolloff Associates, Inc. ("Dolloff New

York") for the period February 10, 2003 to February 10, 2004 (the "policy" or the "2003-2004

policy"); (ii) whether, under the alter-ego theory, Dolloff New Mexico can be considered an insured;

(iii) whether, if under the alter-ego theory, Dolloff New York may be liable for the judgment against

Dolloff New Mexico, the policy provides coverage for Dolloff New York's liability; and (iv) whether

there is a genuine issue of material fact regarding the application of the alter-ego theory. The Court

concludes that Dolloff New Mexico is not an Assured under the policy and that Defendant Steven

Nance cannot use the alter-ego theory to expand the coverage to Dolloff New Mexico; on the other

hand, the policy covers Dolloff New York and anything for which it may be legally responsible, and

the Court cannot say on this motion whether Dolloff New York is responsible for the judgment

against Dolloff New Mexico. Accordingly, the Court will grant the motion for summary judgment

in part and deny it in part.

## FACTUAL BACKGROUND

Underwriters alleges that, on or about December 1997, Simon Heffron, the owner and

operator of Fighting Back Training Institute, Inc. ("Fighting Back"), a karate school in Albuquerque,

contacted James Gorman, the principal of Dolloff New Mexico, for the purpose of obtaining liability

insurance for Fighting Back. See Complaint for Declaratory Judgment ¶ 9, at 2, filed August 19,

2004 (Doc. 1)("Underwriters' Complaint"). Underwriters contends that Heffron paid an initial

deposit, and a temporary insurance contract was issued on December 12, 1997.  See id. ¶ 9, at 3.

Underwriters explains that, before the actual insurance policy was issued, the insurance was canceled

because of Fighting Back's failure to pay premiums.  See id.  The temporary contract and the policy

that was to be issued both contained coverage exclusions for students that participated in martial arts

classes and events, and provided that students who were involved in martial arts training or

competition would need to be covered under a separate accident insurance policy.  See id.

In July 1998, Nance sued Fighting Back in New Mexico state court for damages resulting

from an injury Nance suffered on January 20, 1998 while a student at the school.  Nance obtained a

default judgment against Fighting Back and two individuals in the amount of $751,022.00.  Fighting

Back ceased doing business, and Nance obtained an assignment of all rights Fighting Back had against

all other parties for indemnification, contribution, or other theories of liability related to Nance's

injury.  Based upon that assignment, Nance has filed numerous lawsuits attempting -- unsuccessfully

thus far -- to recover the amount awarded in the state court's default judgment.  Among the targets

of Nance's claims are Dolloff New York, Dolloff New Mexico, and Underwriters.

1.      **The Policy.**

Dolloff New York is a New York corporation.  See Memorandum Brief in Support of Motion

of Certain Underwriters at Lloyd's London for Summary Judgment ¶ 2, at 2, filed August 23, 2006

(Doc. 75)("Summary Judgment Memorandum"); Steven Nance's Answer, Counterclaims,

Crossclaims, and Jury Demand ¶ 3, at 3, filed December 23, 2005 (Doc. 30)("Nance's Answer").

In its application for insurance with Underwriters, Dolloff New York represented that its main office

was located at 120 Delaware Avenue, Buffalo, New York 14202.  See Underwriters' Complaint,

Exhibit A, Lloyd's Errors and Omissions Application Form and Policy No. 501/NB98ACMD at 1

("Policy" or "the Policy"); Nance's Answer ¶ 14, at 2 (admitting Exhibit A is the Policy between Dolloff New York and Underwriters).  The application also represented that Dolloff New York operated branch offices in New York, New Jersey, and Massachusetts, but not in New Mexico.  <u>See</u> Policy, Errors and Admissions Application Form at 1.  The application listed the following subsidiary operations of Dolloff New York: (i) L.J. Dolloff of NY; (ii) L.J. Dolloff of NJ; and (iii) L.J. Dolloff of Massachusetts.  <u>See id.</u>  The policy contains an integration clause which provides that the policy "is issued in reliance upon the truth of [Dolloff New York's] representations and that this Policy embodies all agreements existing between [Dolloff New York] and Underwriters, or any of its agents, relating to this Insurance."  Policy, CONDITIONS ¶ 5, at 6.

The Policy lists Dolloff New York as the "Assured."  Policy at 1.  Paragraph 1 of the "Insuring Agreements" section of the Policy describes the scope of Underwriters' obligation to Dolloff New York.

> The Underwriters will indemnify the Assured for all sums which the Assured shall become legally obligated to pay as damages by reason of any negligent act, error or omission committed or alleged to have been committed by the Assured or by any person for whose negligent acts, errors or omissions the Assured is legally responsible which arise out of the conduct of the Assured's professional activities as Insurance Brokers, Insurance Agents or General Insurance Agents.

Policy, INSURING AGREEMENTS ¶ 1, at 3.  The policy defines three categories of individuals and entities that qualify as the "Assured":

> (a)     the individual, partnership or corporation designated as the Named Assured in the Schedule;
>
> (b)      any partner, executive officer, director, or salaried employee of the Named Assured while acting within the scope of his duties as such;
>
> (c)     any former partner, executive officer, director or salaried employee of the Named Assured for acts committed while acting within the scope of his duties

as such.

Policy, DEFINITIONS ¶ 1 at 4.

Dolloff New Mexico was, at all relevant times, a corporation duly organized and existing under the laws of the State of New Mexico, with its principal place of business in the State of New Mexico.  See Underwriters' Complaint ¶ 7, at 2; Nance's Answer ¶ 1, at 1.  In applications for insurance through Lloyd's that Dolloff New York had completed in previous years, Dolloff New York had identified a branch office in New Mexico.  See Nance's Response to Lloyd's Motion for Summary Judgment, filed October 2, 2006 (Doc. 84)("Nance's Response"), Exhibit A, Lloyd's Errors and Omissions Application Form and Policy No. 501/NB99ACMD ("Policy No. 501/NB99ACMD"); Exhibit B, Lloyd's Errors and Omissions Application Form and Policy No. 501/NB98ACMD ("Policy No. 501/NB98ACMD"); Reply Brief in Support of Motion for Summary Judgment by Certain Underwriters at Lloyd's London at 3, filed December 1, 2006 (Doc. 102)("Underwriters' Reply"). In earlier applications, when Dolloff New York identified a branch office in New Mexico, it did not identify any subsidiaries.  See Policy No. 501/NB99ACMD; Policy No. 501/NB98ACMD.

   2.    **Nance - State I.**

In May 2003, Nance initiated his first attempt to collect the proceeds of the judgment against Fighting Back, suing Dolloff New Mexico and Dolloff New York in New Mexico state district court. See Nance v. L.J. Dolloff Assocs. of N.M., Inc., No. CV-03-03133 (N.M. Second Jud. Dist. 2003)("Nance - State I").  Nance alleged negligent misrepresentation, unfair insurance practices, and bad faith.  Nance alleged that Dolloff New York at all times directed and controlled the activities of Dolloff New Mexico, and that Dolloff New Mexico was the alter ego of and/or the agent of Dolloff New York.

Dolloff New Mexico failed to appear and, in August 2003, the trial court entered default judgment against it on the issue of liability.  The trial court entered a judgment for damages totaling $1,043,286.24 against Dolloff New Mexico on April 27, 2004.  Alleging that the suit was barred on statute of limitations grounds, Dolloff New York filed for summary judgment, which the trial court granted after a hearing on the motion.  Nance then moved for reconsideration on grounds that fraudulent concealment on the part of Dolloff New York had tolled the statute of limitations.  The trial court denied that motion.

In its defense to Nance's action in Nance - State I, Dolloff New York declined to address the nature of its relationship with Dolloff New Mexico.  Dolloff New York characterized that relationship as "immaterial" and indicated that its motion for summary judgment was "limited to the effect of the statute of limitations."  Nance - State I, Dolloff New York's Reply to Plaintiff's Response to Motion for Summary Judgment on Statute of Limitations, at 5.

Nance appealed the trial court's decisions to grant summary judgment and deny his motion for reconsideration to the New Mexico Court of Appeals.  See Nance v. L.J. Dolloff Assocs., Inc., 2006-NMCA-012, 126 P.3d 1215.  In an opinion issued on December 6, 2005, the New Mexico Court of Appeals concluded that the statute of limitations had run on Nance's claims and affirmed the trial court's grant of summary judgment.  With regard to its relationship with Dolloff New Mexico, Dolloff New York assumed on appeal that it was the alter ego of Dolloff New Mexico.  See Nance v. L.J. Dolloff Assocs., Inc., 2006-NMCA-012, ¶ 10, 126 P.3d at 1218 ("We note at the outset that Dolloff New York . . . assumes for purposes of this appeal that Dolloff New Mexico was the alter ego of Dolloff New York.").

3.     __Nance - State II.__

On January 3, 2005, Nance filed a complaint for declaratory judgment in New Mexico state court.  See Nance v. Certain Underwriters at Lloyds of London, CIV-05-00014 (N.M. Second Jud. Dist. 2005)("Nance - State II").  Nance sought a declaration that Dolloff New York was responsible for the judgment against Dolloff New Mexico and that Underwriters had an obligation to indemnify Dolloff New Mexico and Dolloff New York.

Underwriters filed a notice of removal and removed Nance - State II to the United States District Court for the District of New Mexico on February 9, 2005.  See Nance v. Certain Underwriters at Lloyds, London, CV-05-144 JB/WDS (D.N.M 2005)("Nance - Federal I").  On July 31, 2005, the Court remanded Nance - Federal I to the Second State Judicial District Court, concluding that there was not complete diversity of citizenship between the parties, because Nance and Dolloff New Mexico were both citizens of New Mexico.  See Nance - Federal I, Memorandum Opinion and Order at 9, filed July 31, 2005 (Doc. 14)("Remand Opinion").  In reaching its decision, the Court rejected Underwriters' argument that, because Nance had previously acquired a judgment against Dolloff New Mexico, his interests were no longer adverse to Dolloff New Mexico, and that Nance and Dolloff New Mexico's interests were now aligned.  See id. at 11.  The Court reasoned that Dolloff New Mexico had, at all times relevant to this matter, acted in a manner consistent with Dolloff New York's interests, and therefore presumed that the interests of Dolloff New Mexico and Dolloff New York were aligned.  See id. at 12-13.  In conclusion, the Court stated: "There is no sound reason for the Court to now endorse the alleged fiction that these two Dolloff entities have adverse interests by exercising its discretion to realign Dolloff of New Mexico as a Plaintiff in this matter." Id. at 13.

After the Court remanded <u>Nance - State II</u>/<u>Nance - Federal I</u> to the Second State Judicial District, the state court consolidated <u>Nance -State I</u> with <u>Nance - State II</u>, and stayed the consolidated case pending the Court's resolution of this case.[1]

## **PROCEDURAL BACKGROUND**

After Nance filed for a writ of garnishment against Underwriters in <u>Nance - State I</u>, but before Nance had requested declaratory relief from the state district court in <u>Nance - State II</u>, Underwriters filed a Complaint with this Court seeking a declaration that it did not owe a duty to Nance or Dolloff New Mexico.  <u>See</u> Underwriter's Complaint.  Specifically, Underwriters requests the Court to declare: (i) that neither Dolloff New Mexico nor Nance is an assured, and therefore Underwriters has no obligation to indemnify them; and (ii) that, even if Dolloff New Mexico and/or Nance could be considered an assured, there is no potential for coverage under the applicable insurance policy.

On December 23, 2005, Nance filed an Answer, Counterclaim, Crossclaims, and Jury Demand in the federal court case.  <u>See</u> Nance's Answer.  In his Answer, Nance alleges that Underwriters failed to join Dolloff New York and Dolloff New Mexico, and that both were indispensable parties.  <u>See</u> <u>id.</u> at 2.  Additionally, Nance raised counterclaims against Underwriters, and crossclaims against Dolloff New York and Dolloff New Mexico.  Subsequent to filing his Answer, Nance filed a motion requesting that the Court add Dolloff New York as an indispensable party pursuant to rule 19 of the Federal Rules of Civil Procedure.  <u>See</u> Steven Nance's Motion to Join Indispensable Party and Memorandum in Support Thereof, filed December 23, 2005 (Doc. 29).  Underwriters did not object to the joinder, and the Court granted Nance's request, joining Dolloff New York as an Additional

---

[1]The two cases were consolidated under the case number for <u>Nance - State I</u>, No. CV-03-03133.

Party Defendant.  See Order, filed December 31, 2005 (Doc. 33).

On February 8, 2006, Dolloff New York filed a motion to dismiss alleging that the Court did not have jurisdiction over Nance's state-law cause of action against Dolloff New York and that the doctrines of res judicata and collateral estoppel precluded the relief that Nance sought against Dolloff New York.  See Defendant L.J. Dolloff Associates, Inc.'s Motion to Dismiss, filed February 8, 2006 (Doc. 39).  The Court filed a Memorandum Opinion and Order granting Dolloff New York's motion in part and denying it in part on August 23, 2006.  See Memorandum Opinion and Order, filed August 23, 2006 (Doc. 73)("August 23 Opinion").  In its August 23, 2006 opinion, the Court concluded that it has jurisdiction over Nance's claim or claims against Dolloff New York, but that res judicata limited the scope of the claims that Nance could raise at this point in the proceedings. See id. at 22.  The Court held that Nance could "ask the Court to declare Dolloff New York and Dolloff New Mexico a single legal entity," but cautioned that, "[t]o the extent . . . that Nance's [Crossclaim] re-raises his misrepresentation or bad faith insurance practices claims already decided in Nance - State I, or causes Dolloff New York to defend itself against liability for those same claims, res judicata bars his action and the claims will be dismissed."  Id.

On August 23, 2006, the same day the Court issued its opinion on Dolloff New York's motion to dismiss, Underwriters filed this summary judgment motion.  See Underwriters' Summary Judgment Motion.  On October 2, 2006, Nance filed his Response in opposition to Underwriters' summary judgment motion.  See Nance's Response.  Nance argued that the Court should deny Underwriters' motion, because it did not seek the dismissal of claims intended to hold Dolloff New York liable for the judgment entered against Dolloff New Mexico, and that "[t]he sole issue to try is whether Dolloff New York is legally responsible for Dolloff New Mexico."  Id. at 1, 7.

Among other arguments, Nance asserted that Underwriters' motion was "contrary to the interests of its insured," Dolloff New York. Id. at 2. To deal with that assertion, and because Dolloff New York had not filed any response, Underwriters filed a motion requesting an additional thirty days for Dolloff New York to seek legal advice regarding its interest in this litigation, and to file a response to Underwriters' summary judgment motion. See Unopposed Motion for Briefing Schedule on Motion for Summary Judgment Filed by Certain Underwriters ¶¶ 5-6, at 2, filed October 25, 2006 (Doc. 90). On November 16, 2006, Dolloff New York's independently retained counsel, Mr. Steven Vogel, entered a limited appearance for the purpose of responding to Underwriters' summary judgment motion. See Limited Entry of Appearance, filed November 16, 2006 (Doc. 95). The Court granted Underwriters' motion for a briefing schedule that would allow Dolloff New York to respond to its summary judgment motion on November 27, 2006. See Order Granting Unopposed Motion for a Briefing Schedule on Motion for Summary Judgment Filed by Certain Underwriters, filed November 27, 2006 (Doc. 98).

Dolloff New York filed a response to Underwriters' summary judgment motion on November 27, 2006. See Defendant L.J. Dolloff Associates, Inc.'s Response and Memorandum to Certain Underwriters at Lloyd's, London, Motion and Memorandum for Summary Judgment [Doc. 74 & 75], filed November 27, 2006 (Doc. 97)("Dolloff New York's Response"). In its response, Dolloff New York agreed with Underwriters that: (i) Dolloff New Mexico was never an Assured under the policy; and (ii) that Underwriters are not liable for the judgment against Dolloff New Mexico under the alter-ego doctrine. See id. at 3, 7. Dolloff New York urges the Court to grant the Underwriters' motion upon those two narrow issues. See id. at 8.

Nance counters that there is a factual and legal dispute to support his alter-ego claim. See

Nance's Response at 4.  Nance contends that, in its Memorandum Opinion and Order remanding Nance - Federal I, the Court recited many of the alleged deficiencies concerning Dolloff New Mexico's corporate status.  See id. (citing Remand Opinion).  Nance refers to portions of the Court's Remand Opinion in which the Court made observations about the relationship between Dolloff New York and New Mexico during the litigation in Nance - State I.  See Nance's Response at 4.  Nance emphasizes that, in its Remand Opinion, the Court observed that: (i) Dolloff New York did not safeguard the books and records of Dolloff New Mexico; (ii) Lawrence Dolloff purported to resign as the last remaining officer and director of Dolloff New Mexico on the same day that the state court granted Nance's motion to compel Dolloff New York to respond to discovery requests; and (iii) Lawrence Dolloff effected the dissolution of Dolloff New Mexico in October 2003, certifying that he had made adequate provision for the debts of that corporation as New Mexico state statutes require.  See id.; Remand Opinion at 3.

Pursuant to rule 56 of the Federal Rules of Civil Procedure, Underwriters moves for summary judgment or, in the alternative for partial summary judgment, in favor of Underwriters and against Nance, on each of the causes of action in Underwriters' Complaint against Nance and on Nance's Counterclaim against Underwriters.  See Summary Judgment Motion at 1.  Underwriters seek a declaration that: (i) Dolloff New Mexico is not an Assured under the policy; and (ii) even if Dolloff New Mexico is an alter ego of Dolloff New York, the alter-ego doctrine cannot create coverage for Dolloff New Mexico under the policy.  See id. at 2.

## LAW GOVERNING SUMMARY JUDGMENT MOTIONS

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ.

P. 56(c). See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The opposing party may not rest

upon mere allegations and denials in the pleadings, but must set forth specific facts showing that there

is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(citing

Fed. R. Civ. P. 56(e)). An issue of fact is "genuine" if the evidence is significantly probative or more

than merely colorable such that a jury could reasonably return a verdict for the non-moving party.

Id. at 249-50 (citations omitted). Mere assertions or conjecture as to factual disputes are not enough

to survive summary judgment. See Branson v. Price River Coal Co., 853 F.2d 768, 771-72 (10th Cir.

1988). The court may consider only admissible evidence when ruling on a motion for summary

judgment. See World of Sleep, Inc. v. La-Z-Boy Chair, Co., 756 F.2d 1467, 1474 (10th Cir.

1985)(citing Fed. R. Civ. P. 56(e)).

The party seeking summary judgment has an "initial burden to show that there is an absence

of evidence to support the nonmoving party's case." Munoz v. St. Mary-Corwin Hosp., 221 F.3d

1160, 1164 (10th Cir. 2000)(quoting Thomas v. IBM, 48 F.3d 478, 484 (10th Cir. 1995))(internal

quotations omitted). Upon meeting that burden, the non-moving party must "identify specific facts

that show the existence of a genuine issue of material fact." Munoz v. St. Mary-Corwin Hosp., 221

F.3d at 1164 (citations and internal quotations omitted). "The party opposing the motion must

present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor."

Id. (citations and internal quotations omitted). The mere existence of a scintilla of evidence in

support of the plaintiff's position is not sufficient; there must be evidence on which the fact finder

could reasonably find for the plaintiff. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. The

non-moving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions,

answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. at 324 (internal quotations omitted). "In a response to a motion for summary judgment, a party cannot rest on ignorance of the facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Biester v. Midwest Health Servs., Inc., 77 F.3d 1264, 1266 (10 Cir. 1996). When evaluating a motion for summary judgment, the court examines the factual record and reasonable inference therefrom in the light most favorable to the party opposing summary judgment. See Sigmon v. CommunityCare HMO, Inc., 234 F.3d 1121, 1124-25 (10th Cir. 2000).

## NEW MEXICO LAW REGARDING INTERPRETATION OF INSURANCE POLICIES

The Supreme Court of New Mexico has explained that "[t]he interpretation of an insurance contract is a matter of law about which the court has the final word." Battishill v. Farmers Alliance Ins. Co., 2006-NMSC-004, ¶ 6, 127 P.3d 1111, 1113 (quoting Rummel v. Lexington Ins. Co., 1997-NMSC-041, ¶ 60, 945 P.2d 970, 984). When a contract requires interpretation, it is "well settled that, absent a statute to the contrary, insurance contracts are construed by the same principles which govern the interpretation of all contracts." Rummel v. Lexington Ins. Co., 1997-NMSC-041, ¶ 18, 945 P.2d at 976 (internal quotations omitted). Accordingly, policy language is "not interpreted based on a subjective view of the coverage, but on 'the objective expectations the language of the policy would create in the mind of a hypothetical reasonable insured.'" City of Santa Rosa v. Twin City Fire Ins. Co., 2006-NMCA-118, ¶ 7, 143 P.3d 196, 198 (quoting Battishill v. Farmers Alliance Ins. Co., 2006-NMSC-004, ¶ 13, 127 P.3d at 1114). As a matter of public policy, insurance contracts are

typically construed in favor of the insured; thus, when policy language is ambiguous, "the court's construction of an insurance policy will be guided by the reasonable expectations of the insured." Ponder v. State Farm Mut. Auto. Ins. Co., 2000-NMSC-033, ¶ 26, 12 P.3d 960, 967 (quoting Rummel v. Lexington Ins. Co., 1997-NMSC-041, ¶ 22, 945 P.2d at 977).

## NEW MEXICO LAW REGARDING ALTER EGO

The typical application of the alter-ego theory involves an attempt "to pierce the corporate veil, to disregard the separate nature of a corporation and its subsidiary for purposes of liability." Alto Eldorado P'ship v. Amrep Corp., 2005-NMCA-131, ¶ 19, 124 P.3d 585, 592 (citing Scott v. AZL Res., Inc., 107 N.M. 118, 121, 753 P.2d 897, 900 (1988)). The Supreme Court of New Mexico has held that piercing the corporate veil is an equitable remedy. See AG Servs. of Am., Inc. v. Nielsen, 231 F.3d 726, 737 (10th Cir. 2000)(citing Scott v. AZL Res., Inc., 107 N.M. at 121, 753 P.2d at 900); Harlow v. Fibron Corp., 100 N.M. 379, 382, 671 P.2d 40, 43 (1983)("The heart of most corporate veil cases, explicitly or implicitly, is that a corporation has been used for such an improper purpose that equity will permit its corporate form to be disregarded.")(internal quotations omitted). A party seeking to pierce the corporate veil must satisfy three requirements to be eligible for this equitable relief: (i) a showing of instrumentality or domination; (ii) improper purpose; and (iii) proximate causation. See Scott v. AZL Res., Inc., 107 N.M. at 121, 753 P.2d at 900.

New Mexico decisions have equated the instrumentality or domination requirement with the alter-ego doctrine. See id. (citing Harlow v. Fibron Corp., 100 N.M. at 382, 671 P.2d at 43); Cruttenden v. Mantura, 97 N.M. 432, 434, 640 P.2d 932, 934 (1982). To satisfy the instrumentality requirement, a party asserting the alter-ego theory "must prove that the subsidiary or other subservient corporation was operated not in a legitimate fashion to serve the valid goals and purposes

-14-

of that corporation but that it functioned under the domination and control and for the purposes of some dominant party." Harlow v. Fibron Corp., 100 N.M. at 382, 671 P.2d at 43 (quoting Cathy S. Krendl & James R. Krendl, Piercing the Corporate Veil: Focusing the Inquiry, 55 Denv. L.J. 1, 16 (1978)). The Supreme Court of New Mexico has identified factors that guide the court in determining whether an entity is an instrument of or under the domination of another entity.

(1) The parent corporation owns all or majority of the capital stock of the subsidiary.

(2) The parent and subsidiary corporations have common directors or officers.

(3) The parent corporation finances the subsidiary.

(4) The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation.

(5) The subsidiary has grossly inadequate capital.

(6) The parent corporation pays the salaries or expenses or losses of the subsidiary.

(7) The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation.

(8) In the papers of the parent corporation, and in the statements of its officers, "the subsidiary" is referred to as such or as a department or division.

(9) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent corporation.

(10) The formal legal requirements of the subsidiary as a separate and independent corporation are not observed.

Cruttenden v. Mantura, 97 N.M. at 434, 640 P.2d at 934 (quoting UAW v. Cardwell Mfg. Co., 416 F. Supp. 1267, 1286 (D. Kan. 1976)). See Robertson v. Rocky Mountain Metals, Inc., 2006-NMCA-101, ¶ 13, 142 P.3d 29, 33 (citing Cruttenden v. Mantura, 97 N.M. at 434, 640 P.2d at 934). None of these guidelines is dispositive alone, as "these are only factors for the trial court to consider in

determining whether or not to recognize the corporations as separate entities." Cruttenden v. Mantura, 97 N.M. at 434, 640 P.2d at 934.

In addition to showing control, however, a party seeking to pierce the corporate veil must demonstrate "[s]ome form of moral culpability attributable to the parent, such as use of the subsidiary to perpetrate a fraud." Jemez Agency, Inc. v. Cigna Corp. & Ins. Co. of N. Am., 866 F. Supp. 1340, 1345 (D.N.M. 1994)(Burciaga, J.)(quoting Scott v. AZL Res., Inc., 107 N.M. at 121, 753 P.2d at 900). In assessing the improper purpose factor, "undercapitalization, sham formalities or formation, or fraudulent manipulation or mismanagement resulting in losses, are all facts to be considered." Jemez Agency, Inc. v. Cigna Corp. & Ins. Co. of N. Am., 866 F. Supp. at 1345 (citing Scott v. AZL Res., Inc., 107 N.M. at 122, 753 P.2d at 901). This rule reflects courts' recognition that "corporations are formed precisely for the purpose of insulating the owners thereof and such purpose ought to be respected, whether for liability or jurisdiction, unless there are countervailing reasons not to do so." Alto Eldorado P'ship v. Amrep Corp., 2005-NMCA-131, ¶ 53, 124 P.3d at 600.

## ANALYSIS

Underwriters' motion for summary judgment addresses two narrow issues. Underwriters requests the Court declare that: (i) Dolloff New Mexico is not an assured under the policy; and (ii) under New Mexico law, the alter-ego doctrine cannot create coverage under the policy for Dolloff New Mexico, even if Dolloff New Mexico is an alter ego of Dolloff New York. See Summary Judgment Motion at 2. Although Underwriters' motion only addresses these two issues, its seeks a summary judgment on all claims. Underwriters is entitled to a declaration on the issues it raises in its motion. Because the Court does not believe, however, that these issues fully resolve the question whether there is coverage under the policy for Nance's judgment against Dolloff New Mexico, the

Court will not grant summary judgment entirely in favor of Underwriters.

## I. NANCE DOES NOT CONTROVERT ANY MATERIAL FACT ON WHICH THE MOTION IS BASED.

In their responses to Underwriters' motion for summary judgment, neither Nance nor Dolloff New York specifically contest any of the facts that Underwriters asserts relating to the policy at issue in this case. Nance, in particular, cites additional evidence related to earlier insurance policies that Dolloff New York purchased at Lloyd's, but he does not controvert any fact that Underwriters asserts in its motion.

As an example, Underwriters points the Court's attention to Nance's response to its undisputed material fact No. 4, which indicated that Dolloff New York's application for the policy at issue represented that Dolloff New York had branch offices in New York, New Jersey, and Massachusetts, but not in New Mexico. See Underwriters' Summary Judgment Motion ¶ 4, at 3. In his response, Nance does not dispute the fact asserted, but counters that "this assertion has no bearing on Dolloff New York's liability in alter ego for the judgment against Dolloff New Mexico," and attaches portions of the applications for two earlier insurance policies in which Dolloff New York had identified a branch office in New Mexico. Nance's Response at 2; Policy No. 501/NB99ACMD; Policy No. 501/NB98ACMD.

While Nance contends that these previous applications are evidence that Dolloff New Mexico was the alter ego of Dolloff New York, he does not assert that the previous applications formed any part of the policy at issue in this case. Underwriters emphasizes that the policy in this case contains an integration clause that provides that the policy is issued in reliance upon the truth of Dolloff New York's representations in the application for this policy and that this policy embodies all agreements

existing between Dolloff New York and Underwriters.  See Underwriters' Reply at 3; Policy, CONDITIONS ¶ 5, at 6.  Nance admitted in his Answer that the Policy Underwriters has submitted to the Court is the policy and application between Underwriters and Dolloff New York.  See Nance's Answer ¶ 14, at 2.

The Court has carefully considered the exhibits that Nance has presented in association with his Response to Underwriters' summary judgment motion, in particular Policy Nos. 501/NB99ACMD and 501/NB98ACMD, and agrees with Underwriters that there are several key differences between these earlier policies and the policy at issue in this case that undermine the earlier policies' relevance to the narrow issues at hand in this motion.  First, because Lloyd's is an insurance market, and not an insurance provider, that Dolloff New York had purchased insurance at Lloyd's in previous years does not mean that it purchased from the same underwriting syndicates.  See Underwriters Reply at 4.  Indeed, none of the twenty-four syndicates that subscribed to Policy No. 501/NB99ACMD subscribed to the policy at issue, and only one of the thirty-two syndicates that subscribed to Policy No. 501/NB98ACMD subscribed to the policy at issue.  See id.  The only common syndicate was not the lead underwriter in either of the policies.  See id.  Second, Underwriters argues, and the Court agrees, that facts about Dolloff New York's corporate organization that may have been true in 1998 and 1999, when it applied for Policy Nos. 501/NB99ACMD and 501/NB98ACMD, may not necessarily have continued to be true when it applied for the policy at issue in this case in 2003.  See id.

More important, none of the additional evidence that Nance references creates a disputed issue of material fact with respect to the narrow issues that Underwriters' motion for summary judgment presents.  While it may have relevance whether Dolloff New Mexico was the alter ego of

-18-

Dolloff New York, it has no bearing whether Dolloff New Mexico is an assured under the policy at issue, or on whether the alter-ego theory, in general, can be used to expand coverage under the policy to Dolloff New Mexico.  The material facts relevant to the resolution of this motion are thus not disputed.

## II.    DOLLOFF NEW MEXICO IS NOT AN ASSURED ON OR UNDER THE POLICY.

The parties do not dispute that Dolloff New Mexico is not an assured under the policy.  In its Response to Underwriters' motion for summary judgment, Dolloff New York explicitly agrees that Dolloff New Mexico is not an Assured, and urges the Court to grant Underwriters summary judgment with respect to that issue.  See Dolloff New York's Response at 3.  Similarly, in his Response to the motion for summary judgment, Nance does not contend that Dolloff New Mexico is an "Assured" under the policy.  Indeed, Nance maintains that "[t]he sole issue to try is whether Dolloff New York is legally responsible for Dolloff New Mexico."  Nance's Response at 7.  Consistent with that understanding, Nance argues that "[Underwriters] is liable to the extent Dolloff New York is the alter ego of Dolloff New Mexico."  Id. at 3.

Nor do the parties dispute the language of Underwriters' policy.  Under the plain language of Underwriters' policy, Dolloff New Mexico is not an Assured on the policy.  The schedule of the policy identifies Dolloff New York, not Dolloff New Mexico, as the Named Assured.  See Policy, THE SCHEDULE, at 1.

Moreover, the "Definitions" section of the policy expressly identifies three categories of individuals and entities that qualify as the "Assured."  Policy, DEFINITIONS ¶ 1 at 4.  The policy defines Assured as: (i) the Named Assured; (ii) a partner, executive officer, director, or salaried employee of the Named Assured acting within the scope of his duties; or (iii) a former partner,

-19-

executive officer, director, or salaried employee of the Named Assured who was acting within the scope of his duties at the time of the insured event.  See id.  Dolloff New Mexico cannot be properly classified in any of these categories.

Furthermore, the policy's integration clause explicitly incorporates Dolloff New York's representations in its application because it asserts that the policy is issued in reliance upon the truth of Dolloff New York's representations.  See Underwriters' Reply at 3; Policy, CONDITIONS ¶ 5, at 6.  Dolloff New York represented that it had branch offices in Buffalo, Boston, and Paramus, New Jersey, and three subsidiary companies: (i) L.J. Dolloff of NY; (ii) the L.J. Dolloff of NJ; and (iii) L.J. Dolloff of Massachusetts.  See Policy, Errors and Omissions Application Form.  The application for the policy at issue makes no reference to Dolloff New Mexico.

Because Dolloff New Mexico does not fall within the definition of "Assured" under the policy, and because the policy's language is not ambiguous, the Court concludes that Dolloff New Mexico is not an Assured under the policy.  Underwriters is correct that Dolloff New Mexico is not an "Assured" under the policy, and the Court will grant summary judgment to Underwriters on that issue.  Accordingly, the Court declares that the policy does not cover Dolloff New Mexico or the judgment entered against it in the underlying state court action.

**III.    UNDER NEW MEXICO LAW, THE ALTER-EGO DOCTRINE CANNOT CREATE COVERAGE UNDER THE POLICY FOR DOLLOFF NEW MEXICO EVEN IF DOLLOFF NEW MEXICO IS AN ALTER EGO OF DOLLOFF NEW YORK.**

Underwriters contends that the alter-ego doctrine cannot be used against an innocent third party insurer of a corporation responsible for the debts of an alter-ego corporation.  See Underwriters' Summary Judgement Motion at 8.  Underwriters argues that, because it did not own or control Dolloff New Mexico, or have any involvement in the relationship between Dolloff New

York and its branch offices and subsidiaries, Nance cannot use the alter-ego theory to extend coverage under the policy to Dolloff New Mexico. See id. The Court agrees with the general proposition that the alter-ego doctrine, which is equitable, can be applied only against parties who have engaged in fraud or in some other improper conduct to avoid the payment of obligations to creditors. Nance's alter-ego theory does not create coverage under the policy for the judgment against Dolloff New Mexico.

Nance contends that Dolloff New Mexico was an alter ego of Dolloff New York. For purposes of this motion, the Court will assume that to be true. Under New Mexico law, however, the application of the alter-ego theory to pierce the corporate veil for the purpose of assessing liability requires more. In addition to showing a dominant entity's control over a subsidiary, a party seeking to pierce the corporate veil must demonstrate "[s]ome form of moral culpability attributable to the parent, such as use of the subsidiary to perpetrate a fraud." Jemez Agency, Inc. v. Cigna Corp. & Ins. Co. of N. Am., 866 F. Supp. at 1345 (quoting Scott v. AZL Res., Inc., 107 N.M. at 121, 753 P.2d at 900). In determining whether Dolloff New Mexico was used for an improper purpose, the Court considers factors such as "undercapitalization, sham formalities of formation, or fraudulent manipulation or mismanagement resulting in losses." Jemez Agency, Inc. v. Cigna Corp. & Ins. Co. of N. Am., 866 F. Supp. at 1345 (quoting Scott v. AZL Res., Inc., 107 N.M. at 122, 753 P.2d at 901).

The problem with Nance's argument is that, even if he is able to establish that Dolloff New Mexico was used for an improper purpose, the evidence he has proffered is limited to actions detailing the actions of Dolloff New York. Nance has not proffered any evidence that Underwriters was not an innocent third-party insurer.

Underwriters cite <u>America Home Insurance Co. v. Travelers Indemnity Co.</u>, 175 Cal. Rptr. 826 (Ct. App. 1981), for the proposition that, because "the well-established rule [is] that the alter ego doctrine is not applied 'to eliminate the consequences of corporate operations,' but it is utilized 'to avoid inequitable results,'" the doctrine "'may not be applied 'so as to prejudice the rights of an innocent third party who has dealt with the corporation as such.'" <u>Id.</u> at 834 (quoting <u>U.S. Fire Ins. Co. v. Nat'l Union Fire Ins. Co.</u>, 165 Cal. Rptr. 726, 734 (Ct. App. 1980)). In <u>America Home Insurance Co. v. Travelers Indemnity Co.</u>, the California Court of Appeals noted that equitable relief is available as a means "to prevent fraud or an injustice, not to inflict an obligation on an innocent corporation." 175 Cal. Rptr. at 834. Consequently, "[t]he fraud or inequity sought to be eliminated must be that of the party against whom the alter ego doctrine is invoked, and 'such party must have been an actor in the course of conduct constituting the abuse of corporate privilege.'" <u>Id.</u> (quoting <u>U.S. Fire Ins. Co. v. Nat'l Union Fire Ins. Co.</u>, 165 Cal. Rptr. at 736).

While the Court is aware that <u>America Home Insurance Co. v. Travelers Indemnity Co.</u> is not binding precedent for courts within the Tenth Circuit, and acknowledges that the California Court of Appeals' discussion of the alter-ego theory in that case was dicta for the purposes of the court's holding in that case, the Court finds its reasoning persuasive. The Court believes the California Court of Appeals' holding reflects the improper-purpose requirement the Supreme Court of New Mexico has required a party advancing an alter-ego theory to satisfy before the corporate veil can be pierced. Moreover, the holding in <u>America Home Insurance Co. v. Travelers Indemnity Co.</u> is consistent with New Mexico courts' recognition that "corporations are formed precisely for the purpose of insulating the owners thereof and such purpose ought to be respected, whether for liability or jurisdiction, unless there are countervailing reasons not to do so." <u>Alto Eldorado P'ship v. Amrep Corp.</u>, 2005-NMCA-

131, ¶ 53, 124 P.3d at 600. Without a showing of moral culpability on the part of Underwriters, the Court does not believe it would be appropriate under New Mexico law to extend its policy's coverage to Dolloff New Mexico through the application of the alter-ego theory.

Nance counters that other courts have held that an insurer is liable for a judgment entered against a named insured based on alter-ego liability for a corporation that is not a named insured. Nance bases his argument on the Supreme Court of Georgia's decision in <u>Miller v. Harco National Insurance Co.</u>, 552 S.E.2d 848 (Ga. 2001)("<u>Miller - Georgia</u>"), a case in which the Georgia court answered questions the United States Court of Appeals for the Eleventh Circuit certified to it regarding the extent of coverage a surety agreement included in a motor carrier policy provided. <u>See Miller v. Harco Nat'l Ins. Co.</u>, 280 F.3d 1353, 1355 (11th Cir. 2002)("<u>Miller - Federal II</u>").

In <u>Miller v. Harco National Insurance Co.</u>, the plaintiffs, Byron and Ader Miller, had brought an action to recover a default judgment related to a traffic accident in which Byron Miller was involved with a truck Galo Moya, his sole proprietorship, Shippers Express ("Express"), and his corporation, Shippers Express, Inc. ("SEI") owned. <u>See id.</u> at 1354. After obtaining a default judgment against Moya and SEI in Michigan state court, the Millers sought to have the judgment enforced in the United States District Court for the Northern District of Georgia against Moya, SEI, and Moya's insurance carrier, Harco. <u>See Miller - Georgia</u>, 552 S.E.2d at 849-50. The district court enforced the order against Moya and his company, SEI, but declined to enforce the order against Harco, because the insurance policy insured only Moya's sole proprietorship, Express. <u>See id.</u> at 850. The district court also found that, as a matter of law, Express was the alter ego of SEI. <u>See Miller - Federal II</u>, 280 F.3d at 1354 n.1; <u>Miller - Georgia</u>, 552 S.E.2d at 852.

On appeal, the Eleventh Circuit certified three questions to the Supreme Court of Georgia

inquiring whether the federal district court properly applied Georgia insurance law.  See Miller -
Federal II, 280 F.3d at 1355.  Specifically, the Eleventh Circuit asked the Georgia court whether,
"[w]hen the insured party is found liable based on a theory of piercing the corporate veil, is the
insurer liable for the same, even if no independent coverage exists under the insurance policy?"  Id.
In deciding that the district court's grant of summary judgment to Harco was incorrect, the Supreme
Court of Georgia agreed with the Eleventh Circuit that, while it understood the federal district court's
reluctance to expand coverage under Harco's insurance policy, "we are not adequately convinced that
the public policy encompassed in legislation regarding motor carrier coverage (which allows for broad
construction of motor carrier insurance coverage) and the narrow facts of this case do not dictate
another conclusion."  Miller - Georgia, 552 S.E.2d at 850 (quoting Miller v. Harco Nat'l Ins. Co., 241
F.3d 1331, 1334 (11th Cir. 2001)("Miller - Federal I")).

　　　　The Supreme Court of Georgia began its analysis by pointing out that Moya was a motor
carrier, that Harco was a motor carrier insurer, and that the policy underlying requiring motor carrier
insurance was to protect the public "by assuring those who are injured, in person or property, through
the negligent operation of such vehicles, compensation for the injuries or damages sustained."  Miller
- Georgia, 552 S.E.2d at 851 (internal quotation omitted).  The Supreme Court of Georgia continued
that "[t]he intent of this state's motor carrier laws is that the insurer is to stand in the shoes of the
motor carrier . . . and be liable . . . in any instance of negligence where the motor carrier is liable."
Id. at 852 (internal quotation omitted).  The Supreme Court of Georgia acknowledged that, ordinarily
the law of corporations would not extend the policy's coverage because corporations are generally
separate legal entities, but determined that, "at least where the business involved is a motor carrier,"
it would be inappropriate to apply this limitation in "the rare case" where the negligent party was the

-24-

alter ego of the insured.  Id.  In the view of the Supreme Court of Georgia, "[t]he goal of ensuring monetary recovery by an injured party against a motor carrier would be thwarted if the insurer had to indemnify accident victims only where the insured carrier itself was actively negligent."  Id. at 852-53.

The Court believes that Nance's case is distinguishable from Miller v. Harco National Insurance Co.  Even assuming that Dolloff New Mexico is the alter ego of Dolloff New York, as the Court is for the purposes of this motion, Nance has not pointed to any similar policy concerns related to professional liability insurance that would counsel the Court require Underwriters "to stand in the shoes" of Dolloff New York.  Moreover, the Court believes that both the Eleventh Circuit and the Supreme Court of Georgia limited the scope of the holding in Miller v. Harco National Insurance Co. by focusing on "the public policy encompassed in legislation regarding motor carrier coverage . . . and the narrow facts" of the case.  Miller - Georgia, 552 S.E.2d at 850 (quoting Miller - Federal I, 241 F.3d at 1334).  In the absence of some similar policy counseling an exception to New Mexico's rule that parties being assigned liability pursuant to an alter-ego theory be morally culpable, the Court finds that Underwriters' policy does not extend to cover Dolloff New Mexico under an alter-ego theory.

IV.    UNDERWRITERS MAY BE LIABLE FOR THE JUDGMENT AGAINST DOLLOFF NEW MEXICO BECAUSE DOLLOFF NEW YORK WAS AND IS "LEGALLY RESPONSIBLE" FOR DOLLOFF NEW MEXICO.

Although the Court has determined that Dolloff New Mexico is not an Assured under Underwriters' policy and that the policy cannot be enlarged to cover Dolloff New Mexico under an alter-ego theory, the Court cannot say, at this time, whether Nance can or cannot recover against Underwriters.  The Court therefore will not grant summary judgment completely in favor of

Underwriters and against Nance.

Nance can hold Dolloff New York liable in this action, if at all, only under a theory that Dolloff New York was an alter ego of Dolloff New Mexico and therefore liable for the default judgment against Dolloff New Mexico.  Nance contends that, accordingly, "[t]he issue in this matter is Dolloff New York's liability for a judgment against Dolloff New Mexico and [Underwriters'] liability for that judgment as the insurer of Dolloff New York."  Nance's Response at 5.

Underwriters argues that the Court's August 23, 2006 Order precludes any finding that Dolloff New York is legally responsible for any negligence on the part of Dolloff New Mexico.  See Underwriters' Reply at 11.  Underwriters represents that "[i]f Dolloff New York is not liable for its own negligent act, error, or omission, it can be liable for Dolloff New Mexico's negligent act, error or omission only if Dolloff New York is vicariously liable."  Id.  Underwriters is correct in that the Court held that, "[t]o the extent . . . that Nance's [Crossclaim] re-raises his misrepresentation or bad faith insurance practices claims already decided in Nance - State I, or causes Dolloff New York to defend itself against liability for those same claims, res judicata bars his action and the claims will be dismissed."  August 23 Opinion at 22.  Underwriters is incorrect, however, in its assertion that vicarious liability is the only method by which Dolloff New York may be responsible for Dolloff New Mexico's negligence.

Underwriters did not properly frame the issues in its summary judgment motion to secure a favorable ruling on all its claims.  In its August 23, 2006 opinion, the Court also held that Nance could "ask the Court to declare Dolloff New York and Dolloff New Mexico a single legal entity." Id.  If it is found that Dolloff New Mexico is the alter ego of Dolloff New York, and Nance is able to meet the "improper purpose" and "proximate causation" requirements necessary to pierce the

-26-

corporate veil under New Mexico law, Dolloff New York may be liable for the judgment Nance obtained against Dolloff New Mexico in <u>Nance - State I</u>.   Consequently, the declarations Underwriters requests the Court make in its motion for summary judgment are not dispositive of its potential liability to Nance on all issues.   While Dolloff New Mexico is not an Assured on Underwriters' policy, and Underwriters' policy can not be expanded to provide coverage to Dolloff New Mexico under the alter-ego theory, the Court cannot say, at this stage, that there is no coverage under the policy for Dolloff New York based on the judgment against Dolloff New Mexico in <u>Nance -State I</u> if Dolloff New Mexico is determined to have been the alter ego of Dolloff New York.

Dolloff New York correctly points out that, unlike Dolloff New Mexico, it has separate issues and rights as an "Assured" under the Policy.  <u>See</u> Dolloff New York's Response at 8.  In the policy at issue, Underwriters agreed to indemnify Dolloff New York for its negligence and for negligence of "any person for whose negligent acts, errors or omissions the Assured is legally responsible which arise out of the conduct of the Assured's professional activities as Insurance Brokers, Insurance Agents or General Insurance Agents."  Policy, INSURING AGREEMENTS ¶ 1 at 3.  The language of the policy does not restrict coverage to the named assured.

Underwriters' written motion does not address the applicability of this language should Dolloff New York be found to be "legally responsible" for the acts of Dolloff New Mexico under an alter-ego theory.  Nance's response however, raises this issue, and Underwriters discusses the issue in its reply.  <u>See</u> Nance's Response at 7; Underwriters' Reply at 11-12.  The parties and the Court discussed the provision at the hearing.

Underwriters argues that the policy language that provides coverage for others to whom Dolloff New York may be legally responsible relates to scenarios involving vicarious or derivative

-27-

liability, and not to situations involving the application of the alter-ego doctrine as an equitable remedy meant to prevent injustice.  See Transcript of Hearing at 6:4-7:6 (Barbanel)(taken January 29, 2007)("January 29 Transcript").[2]  Underwriters contends that, because the policy is meant to cover only tort liability, and not equitable remedies, the holding in Nance - State I and the Court's August 23, 2006 opinion -- which stated that Dolloff New York cannot be held liable for the judgment against Dolloff New Mexico under a theory of vicarious liability -- makes the provision inapplicable to this case.  See Underwriters' Reply at 11.

Underwriters also argues that the policy does not provide coverage for Dolloff New York because it expressly requires Dolloff New York's liability to arise out of "the conduct of the Assured's professional activities."  Id. (quoting Policy, INSURING AGREEMENTS ¶ 1, at 3). Underwriters contends "[t]he judgment against Dolloff New Mexico is based on the conduct of its own professional activities, not those of Dolloff New York."  Underwriters' Reply at 11.  See January 29 Transcript at 7:10-14 (Barbanel).  Finally, Underwriters maintains that holding it liable to Dolloff New York based on Dolloff New York's responsibility for the judgment against Dolloff New Mexico is an improper application of the alter-ego doctrine, because the doctrine is not applicable to innocent third parties.  See Underwriters' Reply at 12; January 29 Transcript at 8:23-9:17 (Barbanel).

The Court will deny Underwriters' motion to the extent that it seeks to narrow its coverage for Dolloff New York.  The broad language in Underwriters' coverage of Dolloff New York may support Nance's position that Underwriters is liable if Dolloff New Mexico is the alter ego of Dolloff New York.  The Court cannot say, on the record presently before it, that the default judgment against

---

[2]The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

Dolloff New Mexico did not "arise out of the conduct of [Dolloff New York's] professional activities as Insurance Brokers." Policy, INSURING AGREEMENTS ¶ 1, at 3. If Dolloff New York and Dolloff New Mexico are a single entity, it may be difficult to distinguish how "the judgment against Dolloff New Mexico is based on the conduct of its own professional activities, not those of Dolloff New York." Underwriters' Reply at 11.

Underwriters may have evidence showing the policy language at issue was not meant to cover this situation, but Underwriters has not, to date, presented that evidence. It is sufficient for the Court to say, on the record before it, that it cannot hold, as a matter of law, that Underwriters' policy does not cover the default judgment against Dolloff New Mexico if Dolloff New Mexico is Dolloff New York's alter ego. Finally, at a February 28, 2007 motion hearing in this case, Underwriters' counsel concurred with the Court's analysis that whether the language of the policy provided coverage to Dolloff New York for the judgment against Dolloff New Mexico remained a triable issue. See Transcript of Hearing at 3:4-12 (Court); 6:25-7:1 (Treuer)(taken February 28, 2007).

Nance suggests that Underwriters' motion seeks to strip its insured -- Dolloff New York -- of coverage, while leaving it exposed to Nance's judgment. See Nance's Response at 1. Nance maintains that, because Underwriters' motion makes no reference to Nance's Counterclaim and Crossclaim against Dolloff New York seeking to hold Dolloff New York liable for the judgment entered against Dolloff New Mexico in Nance - State I, the motion is contrary to the interests of Underwriters' insured. See id. at 1-2. Because the Court has granted Underwriters' motion only with regard to two narrow issues -- whether Dolloff New Mexico is an assured under the policy and whether the policy can be expanded to cover Dolloff New Mexico under an alter-ego theory -- the Court need not decide whether Underwriters' motion is contrary to Dolloff New York's interest. The

-29-

Court also notes that, to the extent that the Court has granted Underwriters' motion, it has done so in accordance with Dolloff New York's request.

To the extent Underwriters is arguing that there is no factual or legal basis for the claims of alter ego between Dolloff New Mexico and Dolloff New York, factual issues remain in dispute and the Court will not grant summary judgment.  Nance emphasizes that, in its Remand Opinion in Nance - Federal I, the Court observed that: (i) Dolloff New York did not safeguard the books and records of Dolloff New Mexico; (ii) Lawrence Dolloff purported to resign as the last remaining officer and director of Dolloff New Mexico on the same day that the state court granted Nance's motion to compel Dolloff New York to respond to discovery requests; and (iii) Lawrence Dolloff effected the dissolution of Dolloff New Mexico in October 2003, certifying that he had made adequate provision for the debts of that corporation as New Mexico state statutes require.  See Nance's Response at 4; Remand Opinion at 3.  Applying the guidelines that the Supreme Court of New Mexico enumerated in Cruttenden v. Mantura for determining when one entity is the alter ego of another, see 97 N.M. at 434, 640 P.2d at 934, the Court recognizes that these facts, combined with other evidence the parties may choose to present, might support a finding that Dolloff New Mexico was the alter ego of Dolloff New York.  Accordingly, if Dolloff New Mexico is the alter ego of Dolloff New York, and therefore Dolloff New York is legally responsible for the actions of Dolloff New Mexico, Underwriters might be responsible to provide coverage for the judgment Nance obtained against Dolloff New Mexico in Nance - State I.

The Court cannot yet tell whether Underwriters will be liable to Dolloff New York for a judgment against Dolloff New Mexico because Dolloff New York is legally responsible for Dolloff New Mexico under an alter-ego theory.  To the extent that Underwriters' motion for summary

judgment requests the Court declare that it has no liability in this regard, the motion is denied.

**IT IS ORDERED** that the Motion for Summary Judgment by Plaintiff Certain Underwriters at Lloyd's, London is granted in part and denied in part.  The Court will enter summary judgment declaring: (i) that Dolloff New Mexico was and is not an "Assured" under the policy; and (ii) under the alter-ego doctrine, there is no coverage for Dolloff New Mexico under the policy.  The Court will not, however, at this time, declare that the policy does not provide coverage for Dolloff New York based on the judgment against Dolloff New Mexico in Nance -State I if Dolloff New Mexico is determined to have been the alter ego of Dolloff New York.  Summary judgment on this issue will be denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

R. Nelson Franse
Rodey Dickason, Sloan, Akin
  & Robb, P.A.
Albuquerque, New Mexico

-- and --

Alan H. Barbanel
Stephen D. Treuer
Barbanel & Treuer, P.C.
Los Angeles, California

      *Attorneys for the Plaintiff*

C.D. Carter

Richard J. Valle
Carter Law Firm, P.C.
Albuquerque, New Mexico

> *Attorneys for Defendant , Counterclaimant, Crossclaimant,*
> *and Additional Party Plaintiff Steven Nance*

Steven Vogel
Albuquerque, New Mexico

> *Attorney for Additional Party Defendant*
> *L.J. Dolloff Associates, Inc.*