# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

CERTAIN UNDERWRITERS AT
LLOYD'S, LONDON, SUBSCRIBING TO
POLICY NUMBER 501/NB03ACMD,

       Plaintiff,

vs.                                               No. CIV-04-0937 JB/WDS

STEVEN NANCE AND L.J. DOLLOFF
ASSOCIATES OF NEW MEXICO, INC., a
New Mexico Corporation,

       Defendants.

STEVEN NANCE,

       Counterplaintiff, Crossplaintiff, and Additional Party Plaintiff,

vs.

CERTAIN UNDERWRITERS AT
UNDERWRITERS, LONDON, SUBSCRIBING TO
POLICY NUMBER 501/NB03ACMD,

       Counterdefendant,

L.J. DOLLOFF ASSOCIATES OF NEW MEXICO, INC.,

       Cross Defendant, and

L.J. DOLLOFF ASSOCIATES, INC.,

       Additional Party Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant L.J. Dolloff Associates, Inc.'s

Motion to Strike Jury Demand and Memorandum in Support, filed October 30, 2006 (Doc.

92)("Motion to Strike").  The Court held a hearing on this motion on January 29, 2007.  The primary issue is whether the Court should deny Crossplaintiff Steven Nance's request for a jury trial on his Crossclaim against Additional Party Defendant L.J. Dolloff Associates, Inc. ("Dolloff New York").  Because Nance's Crossclaim against Dolloff New York is solely an action for equitable relief, and therefore Nance is not entitled to a jury under the Seventh Amendment, the Court will grant the motion  to the extent that it seeks a non-jury trial of his Crossclaim against Dolloff New York, but deny the motion to the extent that it seeks to strike Nance's demand for a jury on any other claims in this case to which he has a right to a jury.

## FACTUAL BACKGROUND

Plaintiff Certain Underwriters at Lloyds, London, Subscribing to Policy Number 501/NB03ACMD ("Underwriters") alleges that, on or about December 1997, Simon Heffron, the owner and operator of Fighting Back Training Institute, Inc. ("Fighting Back"), a karate school in Albuquerque, New Mexico, contacted James Gorman, the principal of L.J. Dolloff Associates of New Mexico, Inc.  ("Dolloff New Mexico"), for the purpose of obtaining liability insurance for Fighting Back.  See Complaint for Declaratory Judgment ¶ 9, at 2, filed August 19, 2004 (Doc. 1)("Underwriters' Complaint").  Underwriters contends that Heffron paid an initial deposit, and that a temporary insurance contract was issued on December 12, 1997.  See id. ¶ 9, at 3.  Underwriters explains that, before the actual insurance policy was issued, the insurance was canceled because of Fighting Back's failure to pay premiums.  See id.  The temporary contract and the policy that was to be issued both contained coverage exclusions for students that participated in martial arts classes and events, and provided that students who were involved in martial arts training or competition would need to be covered under a separate accident insurance policy.  See id.

In July 1998, Nance sued Fighting Back in New Mexico state court for damages resulting from an injury he suffered on January 20, 1998, while a student at the school. Nance obtained a default judgment against Fighting Back and two individuals in the amount of $751,022.00. Fighting Back ceased doing business, and Nance obtained an assignment of all rights Fighting Back had against all other parties for indemnification, contribution, or other theories of liability related to Nance's injury. Based upon that assignment, Nance has filed numerous lawsuits attempting -- unsuccessfully thus far -- to recover the amount awarded in the state court's default judgment. Among the targets of Nance's claims are Dolloff New York, Dolloff New Mexico, and Underwriters.

1.      **The Policy.**

Dolloff New York is a New York corporation. See Memorandum Brief in Support of Motion of Certain Underwriters at Lloyd's London for Summary Judgment ¶ 2, at 2, filed August 23, 2006 (Doc. 75)("Underwriters' Summary Judgment Memorandum"); Steven Nance's Answer, Counterclaims, Crossclaims, and Jury Demand ¶ 3, at 3, filed December 23, 2005 (Doc. 30)("Nance's Answer"). In its application for insurance with Underwriters, Dolloff New York represented that its main office was located at 120 Delaware Avenue, Buffalo, New York 14202. See Underwriters' Complaint, Exhibit A, Lloyd's Errors and Omissions Application Form and Policy No. 501/NB03ACMD at 1 ("Policy" or "the Policy"); Nance's Answer ¶ 14, at 2 (admitting Exhibit A is the Policy between Dolloff New York and Underwriters). The application also represented that Dolloff New York operated branch offices in New York, New Jersey, and Massachusetts, but not in New Mexico. See Policy, Errors and Admissions Application Form at 1. The application listed the following subsidiary operations of Dolloff New York: (i) L.J. Dolloff of NY; (ii) L.J. Dolloff of NJ; and (iii) L.J. Dolloff of Massachusetts. See id. The policy contains an integration clause which

provides that the policy "is issued in reliance upon the truth of [Dolloff New York's] representations and that this Policy embodies all agreements existing between [Dolloff New York] and Underwriters, or any of its agents, relating to this Insurance."  Policy, CONDITIONS ¶ 5, at 6.

The Policy lists Dolloff New York as the "Assured."  Policy at 1.  Paragraph 1 of the "Insuring Agreements" section of the Policy describes the scope of Underwriters' obligation to Dolloff New York.

> The Underwriters will indemnify the Assured for all sums which the Assured shall become legally obligated to pay as damages by reason of any negligent act, error or omission committed or alleged to have been committed by the Assured or by any person for whose negligent acts, errors or omissions the Assured is legally responsible which arise out of the conduct of the Assured's professional activities as Insurance Brokers, Insurance Agents or General Insurance Agents.

Policy, INSURING AGREEMENTS ¶ 1, at 3.  The policy defines three categories of individuals and entities that qualify as the "Assured":

(a)     the individual, partnership or corporation designated as the Named Assured in the Schedule;

(b)      any partner, executive officer, director, or salaried employee of the Named Assured while acting within the scope of his duties as such;

(c)     any former partner, executive officer, director or salaried employee of the Named Assured for acts committed while acting within the scope of his duties as such.

Policy, DEFINITIONS ¶ 1 at 4.

Dolloff New Mexico was, at all relevant times, a corporation duly organized and existing under the laws of the State of New Mexico, with its principal place of business in the State of New Mexico.  See Underwriters' Complaint ¶ 7, at 2; Nance's Answer ¶ 1, at 1.  In applications for insurance through Lloyd's that Dolloff New York had completed in previous years, Dolloff New

York had identified a branch office in New Mexico.  See Nance's Response to Lloyd's Motion for Summary Judgment, filed October 2, 2006 (Doc. 84)("Nance's Summary Judgment Response"), Exhibit A, Lloyd's Errors and Omissions Application Form and Policy No.501/NB99ACMD ("Policy No. 501/NB99ACMD"); Exhibit B, Lloyd's Errors and Omissions Application Form and Policy No. 501/NB98ACMD ("Policy No. 501/NB98ACMD"); Reply Brief in Support of Motion for Summary Judgment by Certain Underwriters at Lloyd's London at 3, filed December 1, 2006 (Doc. 102)("Underwriters' Reply").  In earlier applications, when Dolloff New York identified a branch office in New Mexico, it did not identify any subsidiaries.  See Policy No. 501/NB99ACMD; Policy No. 501/NB98ACMD.

**2.    <u>Nance - State I.</u>**

In May 2003, Nance initiated his first attempt to collect the proceeds of the judgment against Fighting Back, suing Dolloff New Mexico and Dolloff New York in New Mexico state district court. <u>See</u> <u>Nance v. L.J. Dolloff Assocs. of N.M., Inc.</u>, No. D-0202-CV-200303133 (N.M. Second Jud. Dist. 2003)("<u>Nance - State I</u>").  Nance alleged negligent misrepresentation, unfair insurance practices, and bad faith.  Nance alleged that Dolloff New York at all times directed and controlled the activities of Dolloff New Mexico, and that Dolloff New Mexico was the alter ego of and/or the agent of Dolloff New York.

Dolloff New Mexico failed to appear and, in August 2003, the trial court entered default judgment against it on the issue of liability.  The trial court entered a judgment for damages totaling $1,043,286.24 against Dolloff New Mexico on April 27, 2004.  Alleging that the suit was barred on statute of limitations grounds, Dolloff New York filed for summary judgment, which the trial court granted after a hearing on the motion.  Nance then moved for reconsideration on grounds that

fraudulent concealment on the part of Dolloff New York had tolled the statute of limitations.  The trial court denied that motion.

In its defense to Nance's action in <u>Nance - State I</u>, Dolloff New York declined to address the nature of its relationship with Dolloff New Mexico.  Dolloff New York characterized that relationship as "immaterial" and indicated that its motion for summary judgment was "limited to the effect of the statute of limitations."  <u>Nance - State I</u>, Dolloff New York's Reply to Plaintiff's Response to Motion for Summary Judgment on Statute of Limitations, at 5.

Nance appealed the trial court's decisions to grant summary judgment and deny his motion for reconsideration to the New Mexico Court of Appeals.  <u>See</u> <u>Nance v. L.J. Dolloff Assocs., Inc.</u>, 2006-NMCA-012, 126 P.3d 1215.  In an opinion issued on December 6, 2005, the New Mexico Court of Appeals concluded that the statute of limitations had run on Nance's claims and affirmed the trial court's grant of summary judgment.  With regard to its relationship with Dolloff New Mexico, Dolloff New York and the state Court of Appeals assumed on appeal that Dolloff New York was the alter ego of Dolloff New Mexico.  <u>See</u>  <u>Nance v. L.J. Dolloff Assocs., Inc.</u>, 2006-NMCA-012, ¶ 10, 126 P.3d at 1218 ("We note at the outset that Dolloff New York . . . assumes for purposes of this appeal that Dolloff New Mexico was the alter ego of Dolloff New York.").

**3.**      **<u>Nance - State II.</u>**

On January 3, 2005, Nance filed a complaint for declaratory judgment in New Mexico state court.  <u>See</u> <u>Nance v. Certain Underwriters at Lloyds of London</u>, No. D-0202-CV-200500014 (N.M. Second Jud. Dist. 2005)("<u>Nance - State II</u>").  Nance sought a declaration that Dolloff New York was responsible for the judgment against Dolloff New Mexico, and that Underwriters had an obligation to indemnify Dolloff New Mexico and Dolloff New York.

Underwriters filed a notice of removal and removed <u>Nance - State II</u> to the United States District Court for the District of New Mexico on February 9, 2005.  See <u>Nance v. Certain Underwriters at Lloyds, London</u>, CV-05-144 JB/WDS (D.N.M 2005)("<u>Nance - Federal I</u>").  On July 31, 2005, the Court remanded <u>Nance - Federal I</u> to the Second State Judicial District Court, concluding that there was not complete diversity of citizenship between the parties, because Nance and Dolloff New Mexico were both citizens of New Mexico.  See <u>Nance - Federal I</u>, Memorandum Opinion and Order at 9, filed July 31, 2005 (Doc. 14)("Remand Opinion").  In reaching its decision, the Court rejected Underwriters' argument that, because Nance had previously acquired a judgment against Dolloff New Mexico, his interests were no longer adverse to Dolloff New Mexico, and that Nance and Dolloff New Mexico's interests were now aligned.  See <u>id.</u> at 11.  The Court reasoned that Dolloff New Mexico had, at all times relevant to this matter, acted in a manner consistent with Dolloff New York's interests, and therefore presumed that the interests of Dolloff New Mexico and Dolloff New York were aligned.  See <u>id.</u> at 12-13.  In conclusion, the Court stated: "There is no sound reason for the Court to now endorse the alleged fiction that these two Dolloff entities have adverse interests by exercising its discretion to realign Dolloff of New Mexico as a Plaintiff in this matter." <u>Id.</u> at 13.

After the Court remanded <u>Nance - State II</u>/<u>Nance - Federal I</u> to the Second State Judicial District, the state court consolidated <u>Nance -State I</u> with <u>Nance - State II</u>, and stayed the consolidated case pending the Court's resolution of this case.[1]

_____

[1]The two cases were consolidated under the case number for <u>Nance - State I</u>, No. D-0202-CV-200303133.

4.    **Underwriters' Action.**

After Nance filed for a writ of garnishment against Underwriters in Nance - State I, but before Nance requested declaratory relief from the state district court in Nance - State II, Underwriters filed its Complaint in federal court seeking a declaration that it did not owe a duty to Nance or Dolloff New Mexico.  See Underwriter's Complaint.  Specifically, Underwriters requests the Court to declare: (i) that neither Dolloff New Mexico nor Nance is an assured, and therefore Underwriters has no obligation to indemnify them; and (ii) that, even if Dolloff New Mexico and/or Nance could be considered an assured, there is no potential for coverage under the applicable insurance policy.

On December 23, 2005, Nance filed an Answer, Counterclaim, Crossclaims, and Jury Demand in the federal case.  See Nance's Answer.  In his Answer, Nance alleges that Underwriters failed to join Dolloff New York and Dolloff New Mexico, and that both were indispensable parties.  See id. at 2.  Additionally, Nance raised counterclaims against Underwriters, and crossclaims against Dolloff New York and Dolloff New Mexico.  Subsequent to filing his Answer, Nance filed a motion requesting that the Court add Dolloff New York as an indispensable party pursuant to rule 19 of the Federal Rules of Civil Procedure.  See Steven Nance's Motion to Join Indispensable Party and Memorandum in Support Thereof, filed December 23, 2005 (Doc. 29).  Underwriters did not object to the joinder, and the Court granted Nance's request, joining Dolloff New York as an Additional Party Defendant.  See Order, filed December 31, 2005 (Doc. 33).

On February 8, 2006, Dolloff New York filed a motion to dismiss, alleging that the Court did not have jurisdiction over Nance's state-law cause of action against Dolloff New York and that the doctrines of res judicata and collateral estoppel preclude the relief that Nance sought against Dolloff New York.  See Defendant L.J. Dolloff Associates, Inc.'s Motion to Dismiss, filed February 8, 2006

(Doc. 39).  The Court filed a Memorandum Opinion and Order granting Dolloff New York's motion in part and denying it in part on August 23, 2006.  See Memorandum Opinion and Order, filed August 23, 2006 (Doc. 73)("August 23 Opinion").  In its August 23, 2006 opinion, the Court concluded that it has jurisdiction over Nance's claim or claims against Dolloff New York, but that res judicata limits the scope of the claims that Nance can raise at this point in the proceedings.  See id. at 22.  The Court held that Nance could "ask the Court to declare Dolloff New York and Dolloff New Mexico a single legal entity," but cautioned that, "[t]o the extent . . . that Nance's [Crossclaim] re-raises his misrepresentation or bad faith insurance practices claims already decided in Nance - State I, or causes Dolloff New York to defend itself against liability for those same claims, res judicata bars his action and the claims will be dismissed."  Id.

On August 23, 2006, the same day the Court issued its opinion on Dolloff New York's motion to dismiss, Underwriters filed a motion for summary judgment.  See Underwriters' Summary Judgment Motion.  On October 2, 2006, Nance filed his Response in opposition to Underwriters' summary judgment motion.  See Nance's Summary Judgment Response.  Nance argued that the Court should deny Underwriters' motion, because it did not seek the dismissal of claims intended to hold Dolloff New York liable for the judgment entered against Dolloff New Mexico, and that "[t]he sole issue to try is whether Dolloff New York is legally responsible for Dolloff New Mexico."  Id. at 1, 7.

Among other arguments, Nance asserted that Underwriters' motion was "contrary to the interests of its insured," Dolloff New York.  Id. at 2.  To deal with that assertion, and because Dolloff New York had not filed any response, Underwriters filed a motion requesting an additional thirty days for Dolloff New York to seek legal advice regarding its interest in this litigation, and to file a response

to Underwriters' summary judgment motion.  See Unopposed Motion for Briefing Schedule on Motion for Summary Judgment Filed by Certain Underwriters ¶¶ 5-6, at 2, filed October 25, 2006 (Doc. 90).  On November 16, 2006, Dolloff New York's independently retained counsel, Mr. Steven Vogel, entered a limited appearance for the purpose of responding to Underwriters' summary judgment motion.  See Limited Entry of Appearance, filed November 16, 2006 (Doc. 95).  The Court granted Underwriters' motion for a briefing schedule that would allow Dolloff New York to respond to its summary judgment motion on November 27, 2006.  See Order Granting Unopposed Motion for a Briefing Schedule on Motion for Summary Judgment Filed by Certain Underwriters, filed November 27, 2006 (Doc. 98).

Dolloff New York filed a response to Underwriters' summary judgment motion on November 27, 2006.  See Defendant L.J. Dolloff Associates, Inc.'s Response and Memorandum to Certain Underwriters at Lloyd's, London, Motion and Memorandum for Summary Judgment [Doc. 74 & 75], filed November 27, 2006 (Doc. 97)("Dolloff New York's Summary Judgment Response").  In its response, Dolloff New York agreed with Underwriters that: (i) Dolloff New Mexico was never an Assured under the policy; and (ii) that Underwriters is not liable for the judgment against Dolloff New Mexico under the alter-ego doctrine.  See id. at 3, 7.  Dolloff New York urged the Court to grant the Underwriters' motion upon those two narrow issues.  See id. at 8.

Nance countered that there are factual and legal disputes supporting his alter-ego claim.  See Nance's Summary Judgment Response at 4.  Nance contends that, in its Memorandum Opinion and Order remanding Nance - Federal I, the Court recited many of the alleged deficiencies concerning Dolloff New Mexico's corporate status.  See id. (citing Remand Opinion).  Nance refers to portions of the Court's Remand Opinion in which the Court made observations about the relationship between

Dolloff New York and Dolloff New Mexico during the litigation in <u>Nance - State I</u>.   <u>See</u> Nance's

Response at 4.   Nance emphasizes that, in its Remand Opinion, the Court observed that: (i) Dolloff

New York did not safeguard the books and records of Dolloff New Mexico; (ii) Lawrence Dolloff

purported to resign as the last remaining officer and director of Dolloff New Mexico on the same day

that the state court granted Nance's motion to compel Dolloff New York to respond to discovery

requests; and (iii) Lawrence Dolloff effected the dissolution of Dolloff New Mexico in October 2003,

certifying that he had made adequate provision for the debts of that corporation as New Mexico state

statutes require.   <u>See</u> <u>id.</u>; Remand Opinion at 3.

On March 9, 2007, the Court granted Underwriters' motion for summary judgment in part

and denied it in part.   <u>See</u> Memorandum Opinion and Order, filed March 9, 2007 (Doc.

124)("Summary Judgment Opinion").   In its Summary Judgment Opinion, the Court entered summary

judgment declaring: (i) that Dolloff New Mexico was and is not an "Assured" under the policy; and

(ii) that, under the alter-ego doctrine, there is no coverage for Dolloff New Mexico under the policy.

<u>See</u> <u>id.</u> at 31.   The Court denied Underwriters' request for summary judgment in part, however,

because "the broad language in Underwriters' coverage of Dolloff New York," <u>id.</u> at 28, and

specifically the policy language that purports to extend coverage to those for whom Dolloff New

York is "legally responsible," Policy, INSURING AGREEMENTS ¶ 1, at 3, "may support Nance's

position that Underwriters is liable if Dolloff New Mexico is the alter ego of Dolloff New York,"

Summary Judgment Opinion at 28.

## <u>PROCEDURAL HISTORY</u>

In his Answer to Underwriters' Complaint, Nance demands, pursuant to rule 38 of the Federal

Rules of Civil Procedure, "a trial by jury upon all issues so triable herein."   Nance's Answer at 12.

Dolloff New York moves the Court, pursuant to rule 39(a)(2), to strike Nance's demand for a jury trial on his Crossclaim against it.  <u>See</u> Motion to Strike at 1.  Dolloff New York contends that Nance's cause of action against it is limited to a request for equitable relief and therefore Nance is not entitled to a jury under rule 38(a).  <u>See</u> <u>id.</u> at 2.  Nance counters that his Crossclaim against Dolloff New York is not solely an equitable claim, but requests that, if the Court determines that he is not entitled to a jury trial as a matter of right, this matter be tried with an advisory jury consistent with rule 39(c).

## <u>LAW REGARDING RIGHT TO A JURY TRIAL</u>

In a civil suit, "[t]he right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States shall be preserved to the parties inviolate." Fed. R. Civ. P. 38(a).  When a jury trial has been demanded, "the trial of all issues so demanded shall be by jury, unless . . . the court upon motion . . . finds that a right of trial by jury of some or all of those issues does not exist under the Constitution or statutes of the United States."  Fed. R. Civ. P. 39(a)(2).

The Seventh Amendment preserves the right to a jury trial "[i]n suits at common law, where the value in controversy shall exceed twenty dollars."  U.S. Const. amend. VII.  The purpose of the Seventh Amendment is to protect the right to a jury trial as it existed at the time of the Amendment's adoption in 1791.  <u>See</u> <u>Curtis v. Loether</u>, 415 U.S. 189, 193 (1974).  To effectuate this purpose, the Supreme Court of the United States has long recognized that "'suits at common law' include 'not merely suits, which the common law recognized among its old and settled proceedings, but [also] suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered.'"  <u>City of</u>

-12-

Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 708 (1999)(quoting Parsons v. Bedford, 28 U.S. 433, 447 (1830)).  The Seventh Amendment "does not apply where the proceeding is not in the nature of a suit at common law" and "has no application to cases where recovery of money damages is an incident to equitable relief."  NLRB v. Jones & Laughlin Steel Corp., 301 U.S. 1, 48 (1937).  See Feltner v. Columbia Pictures Television, Inc., 523 U.S. 340, 348 (1998)("The Seventh Amendment thus applies . . . to 'actions brought to enforce statutory rights that are analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century, as opposed to those customarily heard by courts of equity or admiralty.'")(quoting Granfinanciera, S. A. v. Nordberg, 492 U.S. 33, 42 (1989)).

## ANALYSIS

Dolloff New York asserts that, to the extent that Nance's Crossclaim consists of claims at law for monetary damages, the Court has dismissed those claims.  See Motion to Strike at 2.  Dolloff New York maintains that, because the only remaining claim Nance may raise against it is an equitable claim based on the theory of alter-ego or agency, he does not have a right to a jury trial under rule 38(a).  See id. at 3.  Nance does not argue that he is entitled to have a jury decide equitable claims, but rather contends that, because he is attempting to collect damages, his Crossclaim against Dolloff New York is not an equitable claim.  Because the Court believes that Nance's remaining claim against Dolloff New York is exclusively a claim for equitable relief, the Court concludes that he is not entitled to a jury trial on that claim under the Seventh Amendment and will therefore grant Dolloff New York's motion in part.

-13-

## I.    NANCE'S REMAINING CLAIM AGAINST DOLLOFF NEW YORK IS NOT A CLAIM AT LAW FOR WHICH THE SEVENTH AMENDMENT PRESERVES A RIGHT TO A JURY TRIAL.

In his Crossclaim against Dolloff New York, Nance requests the Court grant him various forms of declaratory relief: (i) a declaration that Dolloff New York had an obligation to defend Dolloff New Mexico in Nance - State I; (ii) a declaration that Dolloff New Mexico is an assured under the policy; (iii) a declaration that Dolloff New York has an obligation to indemnify Dolloff New Mexico for the default judgment entered against it in Nance - State I; (iv) a declaration that Dolloff New York is legally responsible for the negligent acts, errors, or omissions of Dolloff New Mexico and is therefore responsible for the payment of the default judgment entered against Dolloff New Mexico in Nance - State I; and (v) a declaration that Underwriters has an obligation to indemnify Dolloff New York, Dolloff New Mexico, and Nance for the judgment entered against Dolloff New Mexico in Nance - State I.  See Nance's Answer ¶ 25, at 7-8.  Nance also requests that the Court award him a  judgment for damages against Dolloff New York in the amount of the judgment entered in Nance - State I.  See id.

To the extent that these requests establish claims against Dolloff New York, the Court has previously dismissed or entered summary judgment on much of Nance's Crossclaim.  In its August 23, 2006 opinion granting in part Dolloff New York's motion to dismiss, the Court emphasized that res judicata barred Nance from relitigating the merits of that action against Dolloff New York.  The Court held that Nance could "ask the Court to declare Dolloff New York and Dolloff New Mexico a single legal entity," but cautioned that, "[t]o the extent . . . that Nance's [Crossclaim] re-raises his misrepresentation or bad faith insurance practices claims already decided in Nance - State I, or causes Dolloff New York to defend itself against liability for those same claims, res judicata bars his action

and the claims will be dismissed." August 23 Opinion at 22. The Court has also entered partial summary judgment declaring that Dolloff New Mexico is not an Assured under the policy. See Summary Judgment Opinion at 31. Consequently, all that remains of Nance's cause of action against Dolloff New York is a claim for declaratory relief whereby Nance requests the Court declare that Dolloff New Mexico is the alter-ego of Dolloff New York and therefore Dolloff New York is legally responsible for the judgment entered against Dolloff New Mexico in Nance - State I.

Nance does not contest the applicable legal standard nor analogize his case to a legal action recognized at common law in 1791. Rather, Nance cites Dairy Queen, Inc. v. Wood, 369 U.S. 469 (1962), and argues that, because his ultimate goal is to collect money damages, his remaining claim against Dolloff New York is not solely equitable. See Nance's Response to Dolloff's Motion to Strike Jury Demand, filed November 10, 2006 (Doc. 94)("Nance's Response").

The proceedings in Dairy Queen, Inc. v. Wood involved a controversy between owners of the "Dairy Queen" trademark and a franchisee who agreed to pay $150,000.00 for exclusive rights to the trademark in certain portions of Pennsylvania. See Dairy Queen, Inc. v. Wood, 369 U.S. at 473. Under the terms of the contract between the parties, the franchisee agreed to make a small initial payment followed by periodic payments at the rate of 50% of the revenues from sales and franchises associated with the trademark; the contract also included a provision for minimum payments to ensure that the $150,000.00 would be repaid within a specified amount of time. See id. at 474. After alleging a default on the contract's payment provisions, the trademark owners filed an action in federal district court for breach of contract and requesting that the district court: (i) enjoin the franchisee from using the trademark; (ii) perform an accounting to determine the precise amount of money owed and enter judgment in that amount; and (iii) enjoin the franchisee from collecting money

from "Dairy Queen" stores pending the accounting.  See id. at 475.  In light of these requests, the

district court struck the franchisee's jury demand "based upon the view that the right to trial by jury

may be lost as to legal issues where those issues are characterized as 'incidental' to equitable issues."

Id. at 470.

      In reversing the district court and the United States Court of Appeals for the Third Circuit --

which had denied the franchisee's request for mandamus without opinion -- the Supreme Court

reasoned that, regardless whether a district court characterizes particular legal issues as "incidental,"

its precedents required that "any legal issues for which a trial by jury is timely and properly demanded

be submitted to a jury."  Id. at 473.  The Supreme Court in Dairy Queen, Inc. v. Wood explained

"that insofar as the complaint requests a money judgment it presents a claim which is unquestionably

legal."  Id. at 476.

> As an action on a debt allegedly due under a contract, it would be difficult to conceive
> of an action of a more traditionally legal character.  And as an action for damages
> based upon a charge of trademark infringement, it would be no less subject to
> cognizance by a court of law.

Id. at 477.  The Supreme Court emphasized that "the fact that [the licensors'] complaint is cast in

terms of an 'accounting,' rather than in terms of an action for 'debt' or 'damages,'" did not affect its

analysis.  Id.  The Supreme Court concluded "the constitutional right to trial by jury cannot be made

to depend upon the choice of words used in the pleadings."  Id. at 477-78.

      The Court understands that Nance's ultimate objective may be to collect monetary damages,

but, regardless of the language of his pleadings, his remaining claim against Dolloff New York is

solely for equitable relief in the form of a declaratory judgment.  The Court has specifically ruled res

judicata bars his legal claims against Dolloff New York and that he cannot obtain damages against

Dolloff New York in this proceeding.  The only question remaining in association with Nance's action against Dolloff New York is whether Dolloff New York is the alter-ego of Dolloff New Mexico.  The typical application of the alter-ego theory involves an attempt "to pierce the corporate veil, to disregard the separate nature of a corporation and its subsidiary for purposes of liability."  Alto Eldorado P'ship v. Amrep Corp., 2005-NMCA-131, ¶ 19, 124 P.3d 585, 592 (citing Scott v. AZL Res., Inc., 107 N.M. 118, 121, 753 P.2d 897, 900 (1988)).  Under New Mexico law, piercing the corporate veil is an equitable remedy.  See AG Servs. of Am., Inc. v. Nielsen, 231 F.3d 726, 737 (10th Cir. 2000)(citing Scott v. AZL Res., Inc., 107 N.M. at 121, 753 P.2d at 900); Harlow v. Fibron Corp., 100 N.M. 379, 382, 671 P.2d 40, 43 (1983)("The heart of most corporate veil cases, explicitly or implicitly, is that a corporation has been used for such an improper purpose that equity will permit its corporate form to be disregarded.")(internal quotations omitted).  Because Nance's remaining claim against Dolloff New York does not require a jury trial under the Seventh Amendment or rule 38, the Court will disregard Nance's jury demand in association with his Crossclaim against Dolloff New York.

In its motion, Dolloff New York requests "that the Court strike Nance's demand for a jury trial as to the crossclaims against Dolloff New York," Motion to Strike at 1, and that the Court enter an order "striking Nance's request for jury trial as to the crossclaims against Dolloff New York," id. at 4.  The motion's title, "Defendant L.J. Dolloff Associates, Inc's Motion to Strike Jury Demand and Memorandum in Support," however, seems broader than the relief Dolloff New York requests in the text of the motion.  While the Court will disregard[2] Nance's jury demand with respect to Nance's

_____

[2]While many courts and parties use the language of "striking" the jury demand, rule 12 limits the use of motions to strike to "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" in "any pleading."  Fed. R. Civ. P. 12(f).  There is nothing wrong with Nance's

Crossclaim against Dolloff New York, to the extent that the title of Dolloff New York's motion can be construed to request that the Court entirely strike Nance's demand for "a trial by jury upon all issues so triable herein," Nance's Answer at 12, the motion is denied. The Court will not, at this time, strike Nance's demand for a jury on any other claim remaining in this case.

## II.   THE COURT WILL NOT EMPANEL AN ADVISORY JURY TO ASSIST IT IN THIS MATTER.

Nance requests that, if the Court determines that his Crossclaim against Dolloff New York is not subject to a jury trial of right, the Court use an advisory jury in adjudicating the matter. See Nance's Response at 2. Nance references Garcia v. Coffman, 1997-NMCA-092, 946 P.2d 216, and describes that case as one in which the plaintiff tried his claim for piercing the corporate veil before a jury. Because Nance has not fully accounted for differences between the procedural posture in Garcia v. Coffman compared to his case, and because he has not provided any explanation how using an advisory jury would assist the Court in this case, the Court will deny his request.

After being involved in an automobile accident in 1991, the plaintiff in Garcia v. Coffman received treatment at a corporate chiropractic clinic that Defendant Ted Coffman owned. See id. ¶ 4, 946 P.2d at 218. The plaintiff alleged that Coffman hired inexperienced chiropractors and required them to follow a non-discretionary treatment protocol -- involving, in the plaintiff's case, computerized muscle testing, excessive x-rays, blood tests and urinalysis that inexperienced personnel performed, and unnecessary references to another physician for a second opinion -- and that this protocol was employed to generate income for Coffman to patients' detriment. See id. ¶¶ 4-5, 946

jury demand, which merely asks for a jury on all issues that the law allows, and thus the Court need not strike the jury demand. Indeed, it remains in place for factual issues that may arise in the policy coverage phase of the trial. Instead, the Court will not grant Nance a jury trial on the Crossclaim against Dolloff New York.

P.2d at 218.  At trial, a jury "determined that Coffman dominated and controlled [the chiropractic clinic] for his own improper purposes and that such conduct caused damage to Plaintiff," that Coffman engaged in unfair trade practices in violation of the Unfair Practices Act, and that Coffman made a fraudulent misrepresentation to the plaintiff.  Garcia v. Coffman. 1997-NMCA-092, ¶ 7, 946 P.2d at 219.  Subsequent to the jury returning its verdict, "the trial court decided the equitable issue of breach of fiduciary duty against Coffman."  See id. ¶ 8, 946 P.2d at 219.

The Court believes there are important distinctions between Garcia v. Coffman and Nance's Crossclaim against Dolloff New York.  First, unlike Nance's Crossclaim, which is limited to the single issue whether Dolloff New York is the alter-ego of Dolloff New Mexico, the plaintiff's cause of action in Garcia v. Coffman involved multiple claims.  To the extent that those claims involved equitable determinations, those equitable claims shared common factual issues with legal claims premised on statutory rights and recognized in tort under the common law.

Second, the plaintiff in Garcia v. Coffman did not explicitly plead an alter-ego theory.  Indeed, one of the issues that Coffman argued on appeal was that the plaintiff's complaint failed to state a cause of action for piercing the corporate veil and the evidence was insufficient to support that claim. Moreover, in his special concurrence to the majority opinion in Garcia v. Coffman, the Honorable Harris L. Hartz, then Chief Judge of the New Mexico Court of Appeals and now Circuit Judge on the United States Court of Appeals for the Tenth Circuit, stated that the majority's "application of piercing-the-corporate-veil doctrine . . . is unnecessary and creates potential for confusion."  Id. ¶ 50, 946 P.2d at 226.  Judge Hartz explained that alter-ego analysis was "unnecessary because Dr. Coffman, an officer of the corporation, is liable for his own fraudulent conduct under staightforward application of the law of agency."  Id. ¶ 51, 946 P.2d at 226.

Dolloff New York asserts that "Nance has not set forth any reasons for the Court to use an advisory jury in this matter."  Defendant L.J. Dolloff Associates, Inc.'s Reply in Support of its Motion to Strike Jury Demand at 4, filed November 29, 2006 (Doc. 100).  Dolloff New York contends that, to the extent that Nance's Crossclaim involves questions related to insurance coverage, the use of a jury could be prejudicial to Dolloff New York.  See id.

The Court agrees that the potential for jury prejudice exists to the extent that the questions relevant to Nance's Crossclaim involve insurance coverage.  In addition, while Nance contends that a jury is capable of resolving the questions in his Crossclaim, see Nance's Response at 2 ("An advisory jury can determine facts that are in dispute. . . . A properly charged jury can determine any questions of fact in this matter."), he does not offer any explanation why a jury should be employed or how empaneling an advisory jury would be helpful to the Court.  Nor has Nance cited any authority suggesting that it is preferable for a jury, rather than a court, to hear alter-ego claims. Absent such a showing, and because the Court believes that there is at least some risk of juror prejudice because of the presence of issues involving insurance coverage, the Court will not employ an advisory jury.

**IT IS ORDERED** that the Defendant L.J. Dolloff Associates, Inc.'s Motion to Strike Jury Demand and Memorandum in Support is granted to the extent that it seeks a non-jury trial of Nance's Crossclaim against Dolloff New York, but denied to the extent that it seeks to strike Nance's demand for a jury on any other claims in this case to which he has a right to a jury.

_____
UNITED STATES DISTRICT JUDGE

_Counsel:_

R. Nelson Franse
Lisa Chavez Ortega
Rodey Dickason, Sloan, Akin
  & Robb, P.A.
Albuquerque, New Mexico

-- and --

Alan H. Barbanel
Stephen D. Treuer
Barbanel & Treuer, P.C.
Los Angeles, California

 _Attorneys for the Plaintiff_

Carroll D. Carter III
Richard J. Valle
Carter Law Firm, P.C.
Albuquerque, New Mexico

 _Attorneys for Defendant, Counterclaimant, Crossclaimant,_
 _and Additional Party Plaintiff Steven Nance_

Pete V. Domenici, Jr.
Lorraine Hollingsworth
Domenici Law Firm, P.C.
Albuquerque, New Mexico

-- and --

Alan R. Jampol
Jampol, Zimet, Skane & Wilcox, LLP
Los Angeles, California

      *Attorney for Additional Party Defendant*
        *L.J. Dolloff Associates, Inc.*

Steven J. Vogel
Albuquerque, New Mexico

      *Attorney for Additional Party Defendant*
        *L.J. Dolloff Associates of New Mexico, Inc.*