## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

CERTAIN UNDERWRITERS AT
LLOYD'S, LONDON, SUBSCRIBING TO
POLICY NUMBER 501/NB03ACMD,

        Plaintiff,

vs.                                                                        No. CIV-04-0937 JB/WDS

STEVEN NANCE AND L.J. DOLLOFF
ASSOCIATES OF NEW MEXICO, INC., a
New Mexico Corporation,

        Defendants.

STEVEN NANCE,

        Counterplaintiff, Crossplaintiff, and Additional Party Plaintiff,

vs.

CERTAIN UNDERWRITERS AT
UNDERWRITERS, LONDON, SUBSCRIBING TO
POLICY NUMBER 501/NB03ACMD,

        Counterdefendant,

L.J. DOLLOFF ASSOCIATES OF NEW MEXICO, INC.,

        Cross Defendant, and

L.J. DOLLOFF ASSOCIATES, INC.,

        Additional Party Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Third Party Defendant L.J. Dolloff &

Associates, Inc.'s Motion to Sever Nance's Claim Against Dolloff New York and for Separate Trial

of that Claim Prior to Trial of Nance's Claims Against Underwriters, filed December 6, 2006 (Doc.

103)("Motion to Sever").  The Court held a hearing on the motion on February 28, 2007.  The primary issues are: (i) whether the Court should sever the trial of Steven Nance's Crossclaim against L.J. Dolloff Associates, Inc. ("Dolloff New York") from the trial of the claims that Nance and Plaintiff Certain Underwriters at Lloyds, London, Subscribing to Policy Number 501/NB03ACMD ("Underwriters") raise against each other; and (ii) whether the Court should hold the trial of Nance's Crossclaim against Dolloff New York before the trial between Nance and Underwriters.  Because the Court believes that there is at least some risk of prejudice and confusion associated with combining the two trials in front of a jury, and because the Court believes that conducting the trial of Nance's Crossclaim before the action between Nance and Underwriters will be the most logical and efficient way to manage the trial, the Court will grant the motion.

## FACTUAL BACKGROUND

Underwriters alleges that, on or about December 1997, Simon Heffron, the owner and operator of Fighting Back Training Institute, Inc. ("Fighting Back"), a karate school in Albuquerque, New Mexico, contacted James Gorman, the principal of Dolloff New Mexico, for the purpose of obtaining liability insurance for Fighting Back.  See Complaint for Declaratory Judgment ¶ 9, at 2, filed August 19, 2004 (Doc. 1)("Underwriters' Complaint").  Underwriters contends that Heffron paid an initial deposit, and that a temporary insurance contract was issued on December 12, 1997. See id. ¶ 9, at 3.  Underwriters explains that, before the actual insurance policy was issued, the insurance was canceled because of Fighting Back's failure to pay premiums.  See id.  The temporary contract and the policy that was to be issued both contained coverage exclusions for students that participated in martial arts classes and events, and provided that students who were involved in martial arts training or competition would need to be covered under a separate accident insurance

policy.  See id.

In July 1998, Nance sued Fighting Back in New Mexico state court for damages resulting from an injury he suffered on January 20, 1998, while a student at the school.  Nance obtained a default judgment against Fighting Back and two individuals in the amount of $751,022.00.  Fighting Back ceased doing business, and Nance obtained an assignment of all rights Fighting Back had against all other parties for indemnification, contribution, or other theories of liability related to Nance's injury.  Based upon that assignment, Nance has filed numerous lawsuits attempting -- unsuccessfully thus far -- to recover the amount awarded in the state court's default judgment.  Among the targets of Nance's claims are Dolloff New York, Dolloff New Mexico, and Underwriters.

## 1.   **The Policy.**

Dolloff New York is a New York corporation.  See Memorandum Brief in Support of Motion of Certain Underwriters at Lloyd's London for Summary Judgment ¶ 2, at 2, filed August 23, 2006 (Doc. 75)("Underwriters' Summary Judgment Memorandum"); Steven Nance's Answer, Counterclaims, Crossclaims, and Jury Demand ¶ 3, at 3, filed December 23, 2005 (Doc. 30)("Nance's Answer").  In its application for insurance with Underwriters, Dolloff New York represented that its main office was located at 120 Delaware Avenue, Buffalo, New York 14202.  See Underwriters' Complaint, Exhibit A, Lloyd's Errors and Omissions Application Form and Policy No. 501/NB03ACMD at 1 ("Policy" or "the Policy"); Nance's Answer ¶ 14, at 2 (admitting Exhibit A is the Policy between Dolloff New York and Underwriters).  The application also represented that Dolloff New York operated branch offices in New York, New Jersey, and Massachusetts, but not in New Mexico.  See Policy, Errors and Admissions Application Form at 1.  The application listed the following subsidiary operations of Dolloff New York: (i) L.J. Dolloff of NY; (ii) L.J. Dolloff of NJ;

and (iii) L.J. Dolloff of Massachusetts.  See id.  The policy contains an integration clause which provides that the policy "is issued in reliance upon the truth of [Dolloff New York's] representations and that this Policy embodies all agreements existing between [Dolloff New York] and Underwriters, or any of its agents, relating to this Insurance."  Policy, CONDITIONS ¶ 5, at 6.

The Policy lists Dolloff New York as the "Assured."  Policy at 1.  Paragraph 1 of the "Insuring Agreements" section of the Policy describes the scope of Underwriters' obligation to Dolloff New York.

> The Underwriters will indemnify the Assured for all sums which the Assured shall become legally obligated to pay as damages by reason of any negligent act, error or omission committed or alleged to have been committed by the Assured or by any person for whose negligent acts, errors or omissions the Assured is legally responsible which arise out of the conduct of the Assured's professional activities as Insurance Brokers, Insurance Agents or General Insurance Agents.

Policy, INSURING AGREEMENTS ¶ 1, at 3.  The policy defines three categories of individuals and entities that qualify as the "Assured":

> (a)   the individual, partnership or corporation designated as the Named Assured in the Schedule;
>
> (b)   any partner, executive officer, director, or salaried employee of the Named Assured while acting within the scope of his duties as such;
>
> (c)   any former partner, executive officer, director or salaried employee of the Named Assured for acts committed while acting within the scope of his duties as such.

Policy, DEFINITIONS ¶ 1 at 4.

Dolloff New Mexico was, at all relevant times, a corporation duly organized and existing under the laws of the State of New Mexico, with its principal place of business in the State of New Mexico.  See Underwriters' Complaint ¶ 7, at 2; Nance's Answer ¶ 1, at 1.  In applications for

insurance through Lloyd's that Dolloff New York had completed in previous years, Dolloff New York had identified a branch office in New Mexico.  <u>See</u> Nance's Response to Lloyd's Motion for Summary Judgment, filed October 2, 2006 (Doc. 84)("Nance's Summary Judgment Response"), Exhibit A, Lloyd's Errors and Omissions Application Form and Policy No.501/NB99ACMD ("Policy No. 501/NB99ACMD"); Exhibit B, Lloyd's Errors and Omissions Application Form and Policy No. 501/NB98ACMD ("Policy No. 501/NB98ACMD"); Reply Brief in Support of Motion for Summary Judgment by Certain Underwriters at Lloyd's London at 3, filed December 1, 2006 (Doc. 102)("Underwriters' Reply").  In earlier applications, when Dolloff New York identified a branch office in New Mexico, it did not identify any subsidiaries.  <u>See</u> Policy No. 501/NB99ACMD; Policy No. 501/NB98ACMD.

**2.      <u>Nance - State I.</u>**

In May 2003, Nance initiated his first attempt to collect the proceeds of the judgment against Fighting Back, suing Dolloff New Mexico and Dolloff New York in New Mexico state district court. <u>See</u> <u>Nance v. L.J. Dolloff Assocs. of N.M., Inc.</u>, No. D-202-CV-200303133 (N.M. Second Jud. Dist. 2003)("<u>Nance - State I</u>").  Nance alleged negligent misrepresentation, unfair insurance practices, and bad faith.  Nance alleged that Dolloff New York at all times directed and controlled the activities of Dolloff New Mexico, and that Dolloff New Mexico was the alter ego of and/or the agent of Dolloff New York.

Dolloff New Mexico failed to appear and, in August 2003, the trial court entered default judgment against it on the issue of liability.  The trial court entered a judgment for damages totaling $1,043,286.24 against Dolloff New Mexico on April 27, 2004.  Alleging that the suit was barred on statute of limitations grounds, Dolloff New York filed for summary judgment, which the trial court

granted after a hearing on the motion.  Nance then moved for reconsideration on grounds that fraudulent concealment on the part of Dolloff New York had tolled the statute of limitations.  The trial court denied that motion.

In its defense to Nance's action in Nance - State I, Dolloff New York declined to address the nature of its relationship with Dolloff New Mexico.  Dolloff New York characterized that relationship as "immaterial" and indicated that its motion for summary judgment was "limited to the effect of the statute of limitations."  Nance - State I, Dolloff New York's Reply to Plaintiff's Response to Motion for Summary Judgment on Statute of Limitations at 5.

Nance appealed the trial court's decisions to grant summary judgment and deny his motion for reconsideration to the New Mexico Court of Appeals.  See Nance v. L.J. Dolloff Assocs., Inc., 2006-NMCA-012, 126 P.3d 1215.  In an opinion issued on December 6, 2005, the New Mexico Court of Appeals concluded that the statute of limitations had run on Nance's claims and affirmed the trial court's grant of summary judgment.  With regard to its relationship with Dolloff New Mexico, the New Mexico Court of Appeals and Dolloff New York assumed on appeal that Dolloff New York was the alter-ego of Dolloff New Mexico.  See Nance v. L.J. Dolloff Assocs., Inc., 2006-NMCA-012, ¶ 10, 126 P.3d at 1218 ("We note at the outset that Dolloff New York . . . assumes for purposes of this appeal that Dolloff New Mexico was the alter ego of Dolloff New York.").

### 3.    Nance - State II.

On January 3, 2005, Nance filed a complaint for declaratory judgment in New Mexico state court.  See Nance v. Certain Underwriters at Lloyds of London, No. D-202-CV-200500014 (N.M. Second Jud. Dist. 2005)("Nance - State II").  Nance sought a declaration that Dolloff New York was responsible for the judgment against Dolloff New Mexico and that Underwriters had an obligation

to indemnify Dolloff New Mexico and Dolloff New York.

Underwriters filed a notice of removal and removed Nance - State II to the United States District Court for the District of New Mexico on February 9, 2005.   See Nance v. Certain Underwriters at Lloyds, London, CV-05-144 JB/WDS (D.N.M 2005)("Nance - Federal I").  On July 31, 2005, the Court remanded Nance - Federal I to the Second State Judicial District Court, concluding that there was not complete diversity of citizenship between the parties, because Nance and Dolloff New Mexico were both citizens of New Mexico.  See Nance - Federal I, Memorandum Opinion and Order at 9, filed July 31, 2005 (Doc. 14)("Remand Opinion").  In reaching its decision, the Court rejected Underwriters' argument that, because Nance had previously acquired a judgment against Dolloff New Mexico, his interests were no longer adverse to Dolloff New Mexico, and that Nance's and Dolloff New Mexico's interests were now aligned.  See id. at 11.  The Court reasoned that Dolloff New Mexico had, at all times relevant to this matter, acted in a manner consistent with Dolloff New York's interests, and therefore presumed that the interests of Dolloff New Mexico and Dolloff New York were aligned.  See id. at 12-13.  In conclusion, the Court stated: "There is no sound reason for the Court to now endorse the alleged fiction that these two Dolloff entities have adverse interests by exercising its discretion to realign Dolloff of New Mexico as a Plaintiff in this matter."  Id. at 13.

After the Court remanded Nance - State II/Nance - Federal I to the Second State Judicial District, the state court consolidated Nance -State I with Nance - State II, and stayed the consolidated case pending the Court's resolution of this case.[1]

---

[1]The two cases were consolidated under the case number for Nance - State I, No. D-202-CV-200303133.

4.      **Underwriters' Action**

After Nance filed for a writ of garnishment against Underwriters in <u>Nance - State I</u>, but before Nance had requested declaratory relief from the state district court in <u>Nance - State II</u>, Underwriters filed its Complaint in federal court seeking a declaration that it did not owe a duty to Nance or Dolloff New Mexico.  <u>See</u> Underwriter's Complaint.  Specifically, Underwriters requests the Court to declare: (i) that neither Dolloff New Mexico nor Nance is an assured, and therefore Underwriters has no obligation to indemnify them; and (ii) that, even if Dolloff New Mexico and/or Nance could be considered an assured, there is no potential for coverage under the applicable insurance policy.

On December 23, 2005, Nance filed an Answer, Counterclaim, Crossclaims, and Jury Demand in the federal court case.  <u>See</u> Nance's Answer.  In his Answer, Nance alleges that Underwriters failed to join Dolloff New York and Dolloff New Mexico, and that both were indispensable parties.  <u>See</u> <u>id.</u> at 2.  Additionally, Nance raised counterclaims against Underwriters, and crossclaims against Dolloff New York and Dolloff New Mexico.  Subsequent to filing his Answer, Nance filed a motion requesting that the Court add Dolloff New York as an indispensable party pursuant to rule 19 of the Federal Rules of Civil Procedure.  <u>See</u> Steven Nance's Motion to Join Indispensable Party and Memorandum in Support Thereof, filed December 23, 2005 (Doc. 29).  Underwriters did not object to the joinder, and the Court granted Nance's request, joining Dolloff New York as an Additional Party Defendant.  <u>See</u> Order, filed December 31, 2005 (Doc. 33).

On February 8, 2006, Dolloff New York filed a motion to dismiss, alleging that the Court did not have jurisdiction over Nance's state-law cause of action against Dolloff New York and that the doctrines of res judicata and collateral estoppel preclude the relief that Nance sought against Dolloff New York.  <u>See</u> Defendant L.J. Dolloff Associates, Inc.'s Motion to Dismiss, filed February 8, 2006

(Doc. 39).  The Court filed a Memorandum Opinion and Order granting Dolloff New York's motion in part and denying it in part on August 23, 2006.  See Memorandum Opinion and Order, filed August 23, 2006 (Doc. 73)("August 23 Opinion").  In its August 23, 2006 opinion, the Court concluded that it has jurisdiction over Nance's claim or claims against Dolloff New York, but that res judicata limited the scope of the claims that Nance could raise at this point in the proceedings. See id. at 22.  The Court held that Nance could "ask the Court to declare Dolloff New York and Dolloff New Mexico a single legal entity," but cautioned that, "[t]o the extent . . . that Nance's [Crossclaim] re-raises his misrepresentation or bad faith insurance practices claims already decided in Nance - State I, or causes Dolloff New York to defend itself against liability for those same claims, res judicata bars his action and the claims will be dismissed."  Id.

On August 23, 2006, the same day the Court issued its opinion on Dolloff New York's motion to dismiss, Underwriters filed a motion for summary judgment.  See Motion for Summary Judgment by Plaintiff Certain Underwriters at Lloyd's, London, filed August 23, 2006 (Doc. 74). On October 2, 2006, Nance filed his Response in opposition to Underwriters' summary judgment motion.  See Nance's Summary Judgment Response.  Nance argued that the Court should deny Underwriters' motion, because it did not seek the dismissal of claims intended to hold Dolloff New York liable for the judgment entered against Dolloff New Mexico, and that "[t]he sole issue to try is whether Dolloff New York is legally responsible for Dolloff New Mexico."  Id. at 1, 7.

Among other arguments, Nance asserted that Underwriters' motion was "contrary to the interests of its insured," Dolloff New York.  Id. at 2.  To deal with that assertion, and because Dolloff New York had not filed any response, Underwriters filed a motion requesting an additional thirty days for Dolloff New York to seek legal advice regarding its interest in this litigation, and to file a response

to Underwriters' summary judgment motion.  See Unopposed Motion for Briefing Schedule on Motion for Summary Judgment Filed by Certain Underwriters ¶¶ 5-6, at 2, filed October 25, 2006 (Doc. 90).  On November 16, 2006, Dolloff New York's independently retained counsel, Mr. Steven Vogel, entered a limited appearance for the purpose of responding to Underwriters' summary judgment motion.  See Limited Entry of Appearance, filed November 16, 2006 (Doc. 95).  The Court granted Underwriters' motion for a briefing schedule that would allow Dolloff New York to respond to its summary judgment motion on November 27, 2006.  See Order Granting Unopposed Motion for a Briefing Schedule on Motion for Summary Judgment Filed by Certain Underwriters, filed November 27, 2006 (Doc. 98).

Dolloff New York filed a response to Underwriters' summary judgment motion on November 27, 2006.  See Defendant L.J. Dolloff Associates, Inc.'s Response and Memorandum to Certain Underwriters at Lloyd's, London, Motion and Memorandum for Summary Judgment [Doc. 74 & 75], filed November 27, 2006 (Doc. 97)("Dolloff New York's Summary Judgment Response").  In its response, Dolloff New York agreed with Underwriters that: (i) Dolloff New Mexico was never an Assured under the policy; and (ii) that Underwriters are not liable for the judgment against Dolloff New Mexico under the alter-ego doctrine.  See id. at 3, 7.  Dolloff New York urged the Court to grant Underwriters' motion upon those two narrow issues.  See id. at 8.

Nance countered that there is a factual and legal dispute to support his alter-ego claim.  See Nance's Summary Judgment Response at 4.  Nance contends that, in its Memorandum Opinion and Order remanding Nance - Federal I, the Court recited many of the alleged deficiencies concerning Dolloff New Mexico's corporate status.  See id. (citing Remand Opinion).  Nance refers to portions of the Court's Remand Opinion in which the Court made observations about the relationship between

Dolloff New York and Dolloff New Mexico during the litigation in <u>Nance - State I</u>.   <u>See</u> Nance's

Response at 4.   Nance emphasizes that, in its Remand Opinion, the Court observed that: (i) Dolloff

New York did not safeguard the books and records of Dolloff New Mexico; (ii) Lawrence Dolloff

purported to resign as the last remaining officer and director of Dolloff New Mexico on the same day

that the state court granted Nance's motion to compel Dolloff New York to respond to discovery

requests; and (iii) Lawrence Dolloff effected the dissolution of Dolloff New Mexico in October 2003,

certifying that he had made adequate provision for the debts of that corporation as New Mexico state

statutes require.   <u>See</u> <u>id.</u>; Remand Opinion at 3.

On March 9, 2007, the Court granted Underwriters' motion for summary judgment in part

and denied it in part.   <u>See</u> Memorandum Opinion and Order, filed March 9, 2007 (Doc.

124)("Summary Judgment Opinion").   In its Summary Judgment Opinion, the Court entered summary

judgment declaring: (i) that Dolloff New Mexico was and is not an "Assured" under the policy; and

(ii) that, under the alter-ego doctrine, there is no coverage for Dolloff New Mexico under the policy.

<u>See</u> <u>id.</u> at 31.   The Court denied Underwriters' request for summary judgment in part, however,

because "the broad language in Underwriters' coverage of Dolloff New York," <u>id.</u> at 28, and

specifically the policy language that purports to extend coverage to those for whom Dolloff New

York is "legally responsible," Policy, INSURING AGREEMENTS ¶ 1, at 3, "may support Nance's

position that Underwriters is liable if Dolloff New Mexico is the alter ego of Dolloff New York,"

Summary Judgment Opinion at 28.

## PROCEDURAL BACKGROUND

In his Answer to Underwriters' Complaint, Nance demands, pursuant to rule 38 of the Federal

Rules of Civil Procedure, "a trial by jury upon all issues so triable herein."   Nance's Answer at 12.

On October 30, 2006, Dolloff New York filed a motion to strike Nance's demand for a jury trial on his Crossclaim against it. See Defendant L.J. Dolloff Associates, Inc's Motion to Strike Jury Demand and Memorandum in Support, filed October 30, 2006. Dolloff New York contended that Nance's cause of action against it is limited to a request for equitable relief and therefore Nance is not entitled to a jury under the rule 38(a). See id. at 2.

On December 6, 2006, before the Court could enter an order on the motion to strike Nance's jury demand, Dolloff New York filed this motion to sever. Dolloff New York moves the Court, pursuant to rule 42(b) of the Federal Rules of Civil Procedure, for an order: (i) that Nance's Crossclaim against Dolloff New York be tried separately from the claims between Nance and Underwriters; and (ii) that the Crossclaim against Dolloff New York be tried first, before the trial of the claims between Underwriters and Nance. See Motion to Sever at 1.

On January 26, 2007, Dolloff filed a Notice of Completion of Briefing on the Motion to Sever, advising the Court that briefing had been completed, and that no responsive motions had been filed. See Notice of Completion of Briefing on Third Party Defendant L.J. Dolloff & Associates, Inc.'s Motion to Sever Nance's Claim Against Dolloff New York and for Separate Trial of that Claim Prior to Trial of Nance's Claims Against Underwriters, filed January 26, 2007 (Doc. 111). Later that day, however, Dolloff New York filed a second notice withdrawing its Notice of Completion of Briefing. See Notice Withdrawing Notice of Completion of Briefing, filed January 26, 2007 (Doc. 112).

On January 29, 2007, the Court held a hearing on Dolloff New York's motion to strike Nance's jury demand. At the hearing, the Court took the motion under advisement, but indicated that it was inclined to grant the motion and try the narrow issue of alter-ego without a jury. See Clerk's

Minutes, filed February 14, 2007 (Doc. 121).  After the January 29, 2007 hearing, on February 6, 2007, Nance filed a motion opposing Dolloff New York's Motion to Sever.  See Nance's Response to Motion to Sever and for Separate Trial, filed February 6, 2007 (Doc. 115).  The next day, Underwriters filed a joinder indicating that it joined Dolloff New York's motion to sever the trials, and to conduct the trial of Nance's Crossclaim against Dolloff New York before the claims between Nance and Underwriters.  See Joinder by Certain Underwriters at Lloyd's, London, in Motion to Sever Nance's Claim Against Dolloff New York and for Separate Trial of that Claim Prior to Trial of Nance's Claims Against Underwriters, filed February 7, 2007 (Doc. 117).

The Court granted in part and denied in part Dolloff New York's motion to strike the jury demand associated with Nance's Crossclaim against it on April 20, 2007.  See Memorandum Opinion and Order, filed April 20, 2007 (Doc. 149).  The Court granted Dolloff New York's motion to the extent that it sought a non-jury trial of Nance's Crossclaim against Dolloff New York, but denied the motion to the extent that it sought to strike Nance's demand for a jury on any other claims in this case to which he has a right to a jury.  See id. at 20.

## LAW REGARDING MENTION OF LIABILITY INSURANCE

Under rule 411 of the Federal Rules of Evidence, "[e]vidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully."  Fed. R. Evid. 411.  See Black v. Hieb's Enters., Inc., 805 F.2d 360, 365 (10th Cir. 1986).  The rule is premised on the general "feeling that knowledge of the presence or absence of liability insurance would induce juries to decide cases on improper grounds."  Fed. R. Evid. 411 advisory committee's note.  Evidence of insurance may be admissible, however, "when other issues, such as ownership, control, bias, or prejudice are involved."  Palmer v. Krueger, 897

F.2d 1529, 1537 (10th Cir. 1990)(citing Fed. R. Evid. 411).  While courts should be careful to proscribe references to liability insurance, unexpected, inadvertent references to insurance "are not generally grounds for mistrial or reversal."  Rios v. Bigler, 67 F.3d 1543, 1550 (10th Cir. 1995)(quoting Zanetti Bus Lines, Inc. v. Hurd, 320 F.2d 123, 129 (10th Cir. 1963)).

## RULE 42

Rule 42(b) of the Federal Rules of Civil Procedure grants trial courts discretion to select specified claims or issues and decide them before proceeding to other matters in the same case where such bifurcation is "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy."  Fed. R. Civ. P. 42(b).  The bifurcation of issues is appropriate "if such interests favor separation of issues and the issues are clearly separable."  Palace Exploration Co. v. Petroleum Dev. Co., 316 F.3d 1110, 1119 (10th Cir. 2003)(quoting Angelo v. Armstrong World Indus., Inc., 11 F.3d 957, 964 (10th Cir. 1993)).  Bifurcation is often in the interest of efficiency and judicial economy when the resolution of one claim may obviate the need to adjudicate one or more other claims.  See Mandeville v. Quinstar Corp., 109 Fed. Appx. 191, 194 (10th Cir. 2004)(approving bifurcation when a trial on piercing the corporate veil would have been unnecessary absent a ruling that the corporation breached a contract).  "Regardless of efficiency and separability, however, bifurcation is an abuse of discretion if it is unfair or prejudicial to a party."  Angelo v. Armstrong World Indus., Inc., 11 F.3d at 964.

## ANALYSIS

The focus of Dolloff New York's motion is that, during the trial of Nance's Crossclaim against Dolloff New York, it would be unfair for the jury to be advised of the coverage dispute between Underwriters and Nance and the possibility that Dolloff New York may be a covered insured

for any liability to Nance.  As the Court has already decided that the Court will decide this matter, however,  almost all of Dolloff New York's allegations of prejudice disappear.  Nevertheless, the Court understands that, based on the procedural posture of the case at this time, Dolloff New York may be inclined to take a position in defending Nance's Crossclaim that is somewhat or entirely inapposite to the position it might take in the underlying action between Nance and Underwriters.

There does not appear to be any dispute that the parties and claims are appropriately joined in this lawsuit, nor does there appear to be any dispute that the Court may order a separate trial of Nance's claim against Dolloff New York to foster judicial economy and/or to avoid prejudice.  The Court believes that there are good reasons to bifurcate the trial of the claims in this case.  Holding separate trials might obviate or reduce the need to litigate all of the issues at play in this case and will eliminate any unfairness that might accrue to Dolloff New York in association with its potential need to take inconsistent positions at a combined trial.  In sum, this case exemplifies a situation in which both convenience and the avoidance of prejudice justify and counsel a separate trial of Nance's Crossclaim against Dolloff New York.

## I.   THE COURT HAS ALREADY RULED THAT IT WILL TRY THE ALTER-EGO THEORY WITHOUT A JURY.

Now that the Court has ruled that it will try Nance's declaratory relief claim against Dolloff New York without a jury, the only remaining questions are whether the coverage dispute between Underwriters and Nance, and the third-party claims that Nance has brought against Dolloff New York, should be tried at the same time, and, if not, which dispute should be tried first.  Because the Court has granted Dolloff New York's motion to disregard Nance's jury demand in association with his Crossclaim, the jury will not have to decide the fate of Dolloff New York in relation to Nance and

-15-

to Underwriters in the same trial.  Dolloff New York contends that the Court should sever the two claims to prevent the jury from learning that Underwriters insures Dolloff New York and to avoid the risk of inconsistent decisions.  Because there will be no jury in the case between Nance and Dolloff New York, the Court need not decide whether the possibility that Dolloff New York might be a covered insured will prejudice the jury in that portion of the case.

The most substantive problem for Dolloff New York with trying the claim simultaneously is the possibility that Dolloff New York might be inclined to take a position in defending against Nance's Crossclaim inapposite to the position it might take in the action between Nance and Underwriters.  Specifically, the Court can imagine Dolloff New York asserting that it is not the alter-ego of Dolloff New Mexico in defending against Nance's Crossclaim, and then, if it were to lose on that claim, contending that the two entities are alter-egos to avoid paying the judgment entered in Nance - State I if Nance were to prevail on his Counterclaim against Underwriters.  Accordingly, the Court believes it should conduct separate trials to avoid unfairly handicapping one or both of Dolloff New York's arguments.

## II.   AS A PRACTICAL MATTER, HOLDING SEPARATE TRIALS MIGHT OBVIATE OR REDUCE THE NEED TO LITIGATE ALL OF THE ISSUES AT PLAY IN THIS CASE.

In his Crossclaim against Dolloff New York, Nance is attempting to pierce Dolloff New York's corporate veil for the purpose of establishing its liability for the default judgment entered against Dolloff New Mexico in Nance - State I.  In his Counterclaim against Underwriters, Nance seeks to establish that Underwriters' policy covers the judgment against Dolloff New Mexico because Dolloff New York is an assured under the policy and is "legally responsible" for Dolloff New Mexico.  In his written response to this motion, Nance argues that the trials of these issues should not be

-16-

separated, because if he wins on one of these claims, and loses on the other, the results will be inconsistent.

The Court does not agree that a result for Nance on one of his claims and against him on the other will necessarily yield inconsistent results. The issues underlying the various claims involve different legal questions and different legal relationships. Nance could prevail on his Crossclaim against Dolloff New York and still lose on his Counterclaim against Underwriters, because the jury believes that Dolloff New Mexico's actions related to the judgment entered in Nance - State I do not fall within the scope of Underwriters' policy.

Dolloff New York makes several assertions about the relationship between Nance's Crossclaim and the underlying coverage action between Nance and Underwriters. First, Dolloff New York cites Rummel v. Lexington Ins. Co., 1997-NMSC-041, ¶ 60, 945 P.2d 970, 984, and contends that the construction and application of Underwriters' policy is for the Court alone to decide as a matter of law. See Third Party Defendant L.J. Dolloff & Associates, Inc.'s Reply in Support of its Motion to Sever and for Separate Trial, filed February 9, 2007 (Doc. 118)("Dolloff New York's Reply"). In Rummel v. Lexington Ins. Co., however, the Supreme Court of New Mexico did not hold that actions involving the scope of an insurance contract's coverage could not be tried to a jury, but merely stated that the interpretation of an insurance contract is a matter of law about which the court, as opposed to the insurance company that had drafted the contract, has the final word. See Rummel v. Lexington Ins. Co., 1997-NMSC-041, ¶ 60, 945 P.2d at 984. Moreover, the case in Rummel v. Lexington Ins. Co. had never gone to trial; the case was on appeal after the trial court granted summary judgment in the matter. See Rummel v. Lexington Ins. Co., 1997-NMSC-041, ¶ 1, 945 P.2d at 972. The Court cannot say at this time that a jury will have no part in deciding the

coverage issue that constitutes the basis for the action between Nance and Underwriters.

Dolloff New York also contends that, if Nance prevails against Dolloff New York, an argument can be made that collateral estoppel will bar Underwriters from asserting its declaratory claim in a second trial. Conversely, Dolloff New York asserts that, if it prevails against Nance, the case will be over, because collateral estoppel will bar Nance from relitigating the issue against Underwriters. The Court disagrees. While the issue whether Dolloff New York is the alter-ego of Dolloff New Mexico will be decided before the second trial, this issue alone does not resolve the coverage issue. Moreover, because Dolloff New York has requested the Court bifurcate the trial of the claims under rule 42(b), see Motion to Sever at 1, rather than to sever the lawsuits into independent actions under rule 21, see Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1518 n.8 (10th Cir. 1991)(distinguishing between separate trials ordered pursuant to rule 42(b) and severance under rule 21), the issue will not be decided in a previous lawsuit and therefore the doctrine of collateral estoppel does not apply, see Nevada v. United States, 463 U.S. 110, 130 (1983)(holding that collateral estoppel can only be used to prevent relitigation of issues litigated in a prior lawsuit).

Rather than the dramatic preclusive effect Dolloff New York assigns to the trial of Nance's Crossclaim, the Court's determination whether Dolloff New York is the alter-ego of Dolloff New Mexico will be analogous to any other factual or legal holding that courts are frequently called to make during the course of litigation proceedings. The Court believes it is more accurate to say that, for the purposes of this lawsuit, the issue whether Dolloff New York is the alter-ego of Dolloff New Mexico will be decided, and Nance and Underwriters cannot continue to litigate the issue. In any case, Nance does not get two tries to prove the identical proposition.

-18-

Moreover, the issue in Nance's Crossclaim against Dolloff New York is legally distinct from the issues implicated in the claims between Nance and Underwriters.  In Nance's Crossclaim, the question is whether Dolloff New York is the alter-ego of Dolloff New Mexico and thus responsible for the judgment entered against Dolloff New Mexico in Nance - State I.  In the action between Nance and Underwriters, the pertinent legal questions involve whether, under the language of the policy, Underwriters is obligated to indemnify Dolloff New York for a sum which it has become legally obligated to pay.

More important, the Court understands that, as a practical matter, the result of Nance's Crossclaim against Dolloff New York may obviate or reduce the need to litigate all of the issues at play in the action between Nance and Underwriters.  Underwriters' policy lists Dolloff New York as the "Assured," Policy at 1, and agrees to indemnify Dolloff New York for any sum it might become legally obligated to pay by reason of its conduct or conduct of "any person for whose negligent acts, errors or omissions [Dolloff New York] is legally responsible," so long as the sum arises "out of the conduct of [Dolloff New York's] professional activities as Insurance Brokers, Insurance Agents or General Insurance Agents," Policy, INSURING AGREEMENTS ¶ 1, at 3.  If Nance were to prevail in his Counterclaim against Dolloff New York, and the Court were to find that Dolloff New York is the alter-ego of Dolloff New Mexico, this result might resolve the issue whether Dolloff New York is "legally responsible" for Dolloff New Mexico, and the parties could concentrate solely on whether Underwriters' policy covers the situation in question.  Conversely, because the Court has already determined that Dolloff New Mexico is not an Assured under the policy, if Dolloff New York were to successfully defend itself against Nance's Crossclaim, Nance might choose to re-evaluate the strength of his defense against Underwriters' declaratory action and his Counterclaim, and make a

decision about the amount of resources he wants to continue to invest in this case.  In any case, resolution of Nance's Crossclaim against Dolloff New York may encourage all the parties in this case to assess their respective positions and make significant decisions about how they want to proceed in this lawsuit.

The Court need not decide, at this time, precisely what impact the outcome of Nance's Crossclaim against Dolloff New York may have on subsequent proceedings in this case.  It is enough that the Court believes that trying the Crossclaim separately and first will simplify the legal issues at play in the action between Nance and Underwriters, and is the most expedient and efficient way to conduct the proceedings in their entirety.

## III.   THE TRIAL OF NANCE'S CLAIMS AGAINST DOLLOFF NEW YORK CONCURRENTLY WITH THE TRIAL OF THE CLAIMS OF NANCE AND UNDERWRITERS AGAINST EACH OTHER MAY UNFAIRLY PREJUDICE <u>DOLLOFF NEW YORK.</u>

Dolloff New York contends that, if Nance's Crossclaim against it is tried simultaneously with the policy coverage claims between Nance and Underwriters, it will be prejudiced because either: (i) the possible existence of liability coverage may induce the jury to rule against it on improper grounds; or (ii) it will be forced to compromise the presentation of its case because it will have to present evidence in a manner that does not reveal the existence of potential coverage.  Because the Court has ruled that Nance is not entitled to a jury on his Crossclaim, and that the Court will decide that portion of the case, these prejudice concerns no longer constitute a firm basis for viable objections.

Dolloff New York also contends that, if the claims are tried together, the Court and the jury run the risk of arriving at inconsistent results.  Dolloff New York notes that the Court might conclude that Dolloff New York was not the alter-ego of Dolloff New Mexico, while the jury might conclude,

in resolving the coverage dispute that the Dolloff entities were alter-egos of each other.  See Dolloff New York's Reply at 2.  Dolloff New York suggests that this result is problematic because, as a practical matter, it could result in a judgment for Dolloff New York and a judgment against Underwriters.  See id.  Dolloff New York argues that such a result would have significant implications, because it would then have a paid claim on its insurance record notwithstanding that it won on the merits of that claim.  See id.

In his Crossclaim against Dolloff New York, Nance is attempting to establish that Dolloff New York is the alter-ego of Dolloff New Mexico to hold Dolloff New York liable for the judgment against Dolloff New York.  In the action between Nance and Underwriters, Nance is attempting to establish that Underwriters is obligated to indemnify Dolloff New York for a sum it has become legally obligated to pay.  Although the Court has already determined Nance cannot hold Dolloff New York liable under theories of vicarious liability, indemnification, or contribution, and therefore is uncertain under what theory Nance may assert coverage if Dolloff New York is not the alter-ego of Dolloff New Mexico, it need not decide that issue at this time.  A finding that Dolloff New York is not the alter-ego of Dolloff New Mexico may be persuasive evidence that Dolloff New York is not legally responsible for Dolloff New Mexico, but the Court is unwilling to say, at this point, that it is certainly dispositive of the coverage issue.  Likewise, a finding that Dolloff New York is the alter-ego of Dolloff New Mexico may be compelling evidence that Dolloff New York is legally responsible for Dolloff New Mexico, but it is not necessarily conclusive with regard to the coverage issue.

Nevertheless, the Court is concerned that Dolloff New York could suffer unfair prejudice if Nance's claims against it are tried concurrently with the claims of Nance and of Underwriters as to each other.  Depending on the disposition of Nance's Crossclaim against Dolloff New York, the

Court can imagine that Dolloff New York may be inclined to take inapposite positions in the trial of the policy coverage claims.  If it is determined that Dolloff New York is not the alter-ego of Dolloff New Mexico, Dolloff New York might choose to advocate against coverage under the policy to avoid having a paid claim on its insurance record.  On the other hand, if it is determined that Dolloff New York is the alter-ego of Dolloff New Mexico, Dolloff New York might choose to advocate for coverage so that Underwriters, and not Dolloff New York, will be responsible for paying the judgment entered against Dolloff New Mexico in <u>Nance - State I</u>.  The Court believes it should try the issues separately to avoid unfairly handicapping one or both of Dolloff New York's arguments in this regard.

**IV.**   **<u>NANCE HAS NOT POINTED TO ANY PREJUDICE FROM SEVERANCE</u>.**

One of the most important considerations before the Court is whether there is any prejudice to Nance in granting this motion.  <u>See</u> <u>Angelo v. Armstrong World Indus., Inc.</u>, 11 F.3d at 964 ("Regardless of efficiency and separability, however, bifurcation is an abuse of discretion if it is unfair or prejudicial to a party."). While Nance incorrectly alludes to the possibility that separate trials might lead to inconsistent results, he has not shown any prejudice, and the Court does not see any.

Similar to Dolloff New York, Nance improperly conflates the legal questions at issue in his Crossclaim with those at issue in the policy coverage claims involving Underwriters.  Nance seems to suggest that a determination that Dolloff New York is the alter-ego of Dolloff New Mexico is equivalent to finding that Dolloff New York is legally responsible for Dolloff New Mexico.  This conclusion may follow, but these are distinct legal questions, and the answer -- which may or may not create liability for Dolloff New York -- is not necessarily dispositive whether there is coverage under Underwriters' policy.

Nance has not made any other showing that separate trials would prejudice his case.  Nance would, of course, prefer to have Dolloff New York argue contradictory positions at one trial, but that is not a "prejudice" as much as a tactical advantage that will be lost in fairness to Dolloff New York. Other than the loss of that strategic maneuver, separation may actually be to Nance's advantage. Separation will allow Nance to concentrate on one claim at a time.  Moreover, if Nance prevails in his Crossclaim against Dolloff New York, he will have very compelling evidence that Dolloff New York is legally responsible for Dolloff New Mexico in the trial on the policy coverage claims against Underwriters.  On the other hand, if he loses, it will give him an opportunity to refocus his strategy before conducting the second trial and/or an opportunity to re-evaluate his case, and determine whether he wishes to continue investing significant resources into it.

## V.   THE COURT WILL TRY NANCE'S CROSSCLAIM AGAINST DOLLOFF NEW YORK FIRST.

The Court is not convinced that the trial against Dolloff New York must occur before the trial against Underwriters, but is convinced that such a sequence makes sense.  Trying the issues between Nance and Underwriters first serves no logical basis or purpose.  Regardless of the outcome of that dispute, Nance's Crossclaim against Dolloff New York is going to be tried in its entirety.  The Court cannot, at this time and on this record, hold that the outcome of the claims between Underwriters and Nance will preclude Nance from pursuing his claim against Dolloff New York.  On the other hand, the Court can imagine how the results of Nance's Crossclaim against Dolloff New York might simplify the trial of the policy coverage claims between Nance and Underwriters, and might obviate or reduce the need to litigate some of the issues relevant to the coverage claims.

The Court is concerned that there could be prejudice to Dolloff New York if Nance's claim

against it is not tried first.  Without a determination of whether Dolloff New York is the alter-ego of Dolloff New Mexico, Dolloff New York may be compelled to make contradictory or compromised arguments during the policy coverage phase of the case, or may be forced to abandon entirely arguments to which it is entitled.  To avoid this prejudice to Dolloff New York, and because Underwriters has joined in Dolloff New York's motion and does not object, the Court will try Nance's claims against Dolloff New York first.  Any other order could result in unfair prejudice that the separation of the trials is designed to avoid.

        **IT IS ORDERED** that the Third Party Defendant L.J. Dolloff & Associates, Inc.'s Motion to Sever Nance's Claim Against Dolloff New York and for Separate Trial of that Claim Prior to Trial of Nance's Claims Against Underwriters is granted.


_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

R. Nelson Franse
Lisa Chavez Ortega
Rodey Dickason, Sloan, Akin
  & Robb, P.A.
Albuquerque, New Mexico

-- and --

Alan H. Barbanel
Stephen D. Treuer
Barbanel & Treuer, P.C.
Los Angeles, California

        *Attorneys for the Plaintiff*

-24-

Carroll D. Carter III
Richard J. Valle
Carter Law Firm, P.C.
Albuquerque, New Mexico

   *Attorneys for Defendant, Counterclaimant, Crossclaimant,*
       *and Additional Party Plaintiff Steven Nance*

Pete V. Domenici, Jr.
Lorraine Hollingsworth
Domenici Law Firm, P.C.
Albuquerque, New Mexico

-- and --

Alan R. Jampol
Jampol, Zimet, Skane & Wilcox, LLP
Los Angeles, California

   *Attorney for Additional Party Defendant*
       *L.J. Dolloff Associates, Inc.*

Steven J. Vogel
Albuquerque, New Mexico

   *Attorney for Additional Party Defendant*
       *L.J. Dolloff Associates of New Mexico, Inc.*